CHANDLER INVESTMENT COMPANY, a Corporation, et al., Appellee, v. The WHITEHAVEN UTILITY DISTRICT OF SHELBY COUNTY, Tennessee, Appellant.—311 S. W. (2d) 603.

Western Section. November 1, 1957.

Certiorari denied by Supreme Court March 4, 1958.

(1)

2

Hon. E. W. Hale, Jr., Memphis, for appellant.

Hon. George P. Douglass, Memphis, for appellee.

CARNEY, J. The Whitehaven Utility District appeals from a decree of the Chancery Court of Shelby County, Tennessee, authorizing the complainant, below, Chandler Investment Company, to contract with the Light, Gas and Water Division of the City of Memphis for service of water to its subdivision known as Adanac Gardens located within the geographical limits of the Whitehaven Utility District. The Utility District insists upon this

appeal that by statute it is given the exclusive franchise to furnish water within its area, and therefore, neither the Light, Gas and Water Division of the City of Memphis nor any other agency has the authority to furnish water within this same area.

The Whitehaven Utility District was created under the provisions of "The Utility District Law of 1937" as amended (T. C. A. Section 6-2601 through 6-2636). Its territory comprises several thousand acres of land located south of Memphis, Tennessee, in Shelby County, Tennessee. It is approximately five miles wide from east to west and four miles long from north to south. The District is engaged in furnishing water, fire protection and sewer services to property located within its territory.

The complainant, Chandler Investment Company, is the owner of a tract of land containing 178 acres located in the extreme northeast corner of the Utility District just south of the City Limits of Memphis, Tennessee. The Chandler Investment Company has already subdivided approximately one-third of said 178 acres into a subdivision containing 135 lots called Adanac Gardens. It plans ultimately to subdivide the entire tract into lots for residential purposes. The houses on said lots may or may not be built by the Chandler Investment Company.

The Utility District was organized with 600 water customers and its operations have increased until now it has over 3000 customers. In addition to furnishing water to these customers, the Utility District maintains and operates a fire department for the benefit of property owners within its district. Also, in conjunction with

the City of Memphis, the District furnishes sewer services to property owners within the District.

The bonded indebtedness of the District is approximately $1,400,000 which is payable solely from revenues received by the District. This indebtedness was incurred to finance the installation of the water mains, etc. There is no lien against the property within the Utility District to secure the payment of said indebtedness but only a lien as provided by T. C. A. Section 6-2623 against the facilities owned by the Utility District itself. The Utility District has no authority to levy taxes for the payment of said bonded indebtedness.

The 178 acres of land was purchased by Chandler Investment Company in March, 1955, for subdivision purposes. In March, 1956, the firm made application to the Utility District to furnish water services and connections to the Adanac Gardens Subdivision. In order to furnish this water to the subdivision it will be necessary for the Utility District to extend its water mains approximately two miles.

The engineers of the Utility District made an estimate of the expense of this project as follows:

"Allen & Hoshall
Consulting Engineers
Memphis, Tennessee

"Cost Estimate
Water Main Extensions
Adanac Gardens Subdivisions
Water Distribution System
Whitehaven, Tennessee

"March 26, 1956

| "Item No. | Description | Quanity | Unit | Unit Price | Amount |
|---|---|---|---|---|---|
| 1. | 10" C. I. Pipe Laid | 10,700 | L.F. | $ 3.80 | $40,660.00 |
| 2. | 8" C.I. Pipe Laid | 1,400 | L.F. | 3.10 | 4,340.00 |
| 3. | 6" C.I. Pipe Laid | 6,000 | L.F. | 2.40 | 14,400.00 |
| 4. | 10" Gate Valve & Box Installed | 5 | Each | 125.00 | 625.00 |
| 5. | 8" Gate Valve & Box Installed | 3 | Each | 90.00 | 270.00 |
| 6. | 6" Gate Valve & Box Installed | 40 | Each | 75.00 | 3,000.00 |
| 7. | 5¼" Fire Hydrants Installed | 23 | Each | 150.00 | 3,450.00 |
| 8. | C.I. Specials Installed | 8,000 | Lbs. | .25 | 2,000.00 |
| 9. | Concrete Valve Box Pad | 48 | Each | 3.00 | 144.00 |
| 10. | Road Gravel Replaced | 300 | C.Y. | 2.50 | 750.00 |
| 11. | Asphalt Replaced | 16 | S.Y. | 2.50 | 40.00 |

| | |
|---|---|
| Total Construction cost | $69,679.00 |
| Engineering & Contingencies | 6,843.00 |
| Water Plant Expansion 15% | 11,478.00 |
| Total Estimated Cost | $88,000.00" |

The directors of the Utility District agreed to extend its mains and furnish water services and fire protection to the Adanac Gardens Subdivision provided the Chandler Investment Company would make an advance of the construction cost of $88,000 under an agreement that the Chandler Investment Company would receive a refund against such advance of 50% of the gross charges received from each metered connection for a period of ten

years. The extension of water mains to other new subdivisions within the Utility District had been financed in this same manner; namely, the developer deposited the total cost of the extension of the water mains, etc., and was pledged a refund of 50% of the gross charges received from each metered connection in the subdivision.

The Chandler Investment Company was the developer of one of these subdivisions in the Utility District and had deposited $55,000 to cover the cost of the extension of water services to a subdivision and at the time of this trial was receiving a refund against said deposit in the amount of 50% of the gross charges from each metered connection.

The Adanac Gardens Subdivision is located only a short distance from the south margin of the City of Memphis. The Light, Gas and Water Division of the City of Memphis has water mains extending within 100 feet of said Adanac Gardens Subdivision. The Light, Gas and Water Division has agreed to furnish water to Adanac Gardens Subdivision on condition that the area is released from the exclusive franchise of the Whitehaven Utility District to furnish water within said district. The charges by the City of Memphis for the furnishing of said water services will be approximately $45,000 with no fire protection and with no right of refund of any of the $45,000.

After the directors of the Utility District refused to furnish water to the subdivision without a deposit of the $88,000, the Chandler Investment Company filed a bill in the Chancery Court of Shelby County, Tennessee, against the Whitehaven Utility District and the City of Memphis. Among other things, the bill alleged that

Chandler Investment Company had already paid the City of Memphis $13,500 for the installation of sewer connections for said subdivision and that there was an arrangement between the Whitehaven Utility District and the City of Memphis that sewage from the area covered by the Whitehaven Utility District would be disposed of through a large sewer line known as the Nonconnah Sewer previously installed by the City of Memphis.

The bill further alleged that the directors of the Whitehaven Utility District had refused to furnish water service to the Adanac Gardens Subdivision as above mentioned and that the sewerage connections were useless without the benefit of water services. The bill prayed that the Court construe the provisions of the Utility Law of 1937, T. C. A. Section 6-2602 through 6-2627 and that the Chancellor render a declaratory judgment of the rights of the respective parties and allow the complainant, Chandler Investment Company, to contract with the City of Memphis for the installation of said water service free from any interference on the part of the Whitehaven Utility District. In the alternative, it was prayed that the Chancery Court issue a mandatory injunction requiring the defendant, Whitehaven Utility District, at its own expense, to lay and install sufficient water mains to furnish water for the Adanac Gardens Subdivision.

Upon the motion of the City of Memphis, the bill was dismissed as to the City of Memphis and the case proceeded to trial with the Whitehaven Utility District as the only defendant.

The directors testified that the Utility District had no funds with which to make the capital expenditure of

$88,000 necessary to extend said water mains and that if such funds were available they would be unwilling to do so because it would not appear to be a profitable venture. The Chancellor held that the complainant, Chandler Investment Company, was free to contract for water for its subdivision from any source it saw fit just as if its property were not located within the physical boundaries of the Utility District. The Utility District was enjoined from interfering in any way with the Chandler Investment Company contracting for and obtaining water from the Light, Gas and Water Division from the City of Memphis or from any other available source.

From the Chancellor's opinion we quote as follows:

"The same issue was presented in the case of M. R. Rutherford, et al, vs. Whitehaven Utility District, No. 58510 Rule Docket in this Court. As in the Rutherford case, it is the finding here that by well settled principles of law and equity, an exclusive franchise is exclusive only by user of the rights and powers bestowed by it. No franchise right exists which involves an obligation to another where there is no present ability to serve the party to whom the obligation is owed.

"Under existing law, in the opinion of the Court, every exclusive franchise is granted so as to make available to all persons proposed to be served by the franchise holder a more adequate supply of the subject of the franchise than such persons could receive should the franchise holder be annoyed and disrupted by competition.

"It appears that the sole effect of sustaining the defendant's position will be to deprive the complainants of water, unless the complainants finance a capital obligation of the District. Sustaining the position of the defendant will not protect the franchise of the Whitehaven Utility District, for it will not make use of the franchise, not being in a position and having elected not to be in a position, to furnish water to the complainants, except upon condition that the complainants discharge, at least initially, the obligation of the Utility District to provide facilities to make water available to the complainants. There is no such obligation on the complainants. There is no such obligation on the complainants, moral or legal.

"The right of the complainants to contract for water is an inherent and inalienable right and is not dependent upon the pleasure of the Whitehaven Utility District, the obligation of the complainants to buy water from the Whitehaven Utility District being based entirely and exclusively upon the ability of the Utility District to furnish the complainants with reasonable quantities of requisite water.

"The Court knows of no case, and none is cited to it, which would allow a franchise holder to deprive a prospective customer of needed water, power, lights, or any other utility when the holder of the franchise is not in a position to supply that which it was contemplated it should have available under the terms of the franchise."

Pertinent sections of the Acts of 1937 under which the Whitehaven Utility District was organized are as follows:

"6-2607. District as municipality — Powers. — From and after the date of the making and filing of such order of incorporation, the district so incorporated shall be a 'Municipality' or public corporation in perpetuity under its corporate name and the same shall in that name be a body politic and corporate with power of perpetual succession, but without any power to levy or collect taxes. Charges for services authorized herein, shall not be construed as taxes. The powers of each district shall be vested in and exercised by a majority of the members of the board of commissioners of the district. So long as the district continues to furnish any of the services which it is herein authorized to furnish, it shall be the sole public corporation empowered to furnish such services in the district unless and until it shall have been established that the public convenience and necessity requires other or additional services. (Acts 1937, ch. 248, sec. 3; C. Supp. 1950, sec. 3695.28.)"

"6-2610. Powers in carrying out purposes.—Any district created pursuant to this chapter shall have the power;

"(a) To sue and be sued.

"(b) To have a seal.

"(c) To acquire by purchase, gift, devise, lease or exercise of the power of eminent domain or other mode of acquisition, hold and dispose of real and personal property of every kind within or without the district, whether or not subject to mortgage or any other liens.

"(d) To make and enter into contracts, conveyances, mortgages, deeds of trust, bonds or leases.

"(e) To incur debts, to borrow money, to issue negotiable bonds and to provide for the rights of holders thereof.

"(f) To fix, maintain, collect and revise rates and charges for any service.

"(g) To pledge all or any parts of its revenues.

"(h) To make such covenants in connection with the issuance of bonds, or to secure the payment of bonds, that a private business corporation can make under the general laws of the state, notwithstanding that such covenants may operate as limitations on the exercise of any power granted by this chapter.

"(i) To use any right-of-way, easement or other similar property right necessary or convenient in connection with the acquisition improvement, operation or maintenance of a utility, held by the state or any political subdivision thereof, provided that the governing body of such political subdivision shall consent to such use. [Acts 1937, ch. 248, sec. 7; C. Supp. 1950, sec. 3695.33 (Williams, sec. 3695.32).]"

"6-2612. General implementing powers.—Any district created pursuant to the provisions of this chapter shall be vested with all the powers necessary and requisite for the accomplishment of the purpose for which such district is created, capable of being delegated by the legislature. No enumeration of particular powers herein created shall be construed to impair or limit any general grant of power * * * of the

same class or classes as those enumerated. The district is empowered to do all acts necessary, proper or convenient in the exercise of the powers granted herein. [Acts 1937, ch. 248, sec. 6; C. Supp. 1950, sec. 3695.32 (Williams, sec. 3695.31).]"

"6-2613. Exemption from state r e g u l a t i o n .— Neither the railroad and public utilities commission nor any other board or commission of like character hereafter created shall have jurisdiction over the district in the management and control of any system, including the regulation of its rates, fees, tolls or charges. [Acts 1937, ch. 248, sec. 16; C. Supp. 1950, sec. 3695.42 (Williams, sec. 3695.41).]"

"6-2616. Powers of commissioners.—The board of commissioners of any district shall have power and authority;

"(1) To exercise by vote, ordinance or resolution all of the general and specific powers of the district.

"(2) To make all needful rules, regulations and by-laws for the management and the conduct of the affairs of the district and of the board.

"(3) To adopt a seal for the district, prescribe the style thereof, and alter the same at pleasure.

"(4) To lease, purchase, sell, convey and mortgage the property of the district and to execute all instruments, contracts, mortgages, deeds or bonds on behalf of the district in such manner as the board shall direct.

"(5) To inquire into any matter relating to the affairs of the district, to compel by subpoena the

attendance of witnesses and the production of books and papers material to any such inquiry, to administer oaths to witnesses and to examine such witnesses.

"(6) To appoint and fix the salaries and duties of such officers, experts, agents and employees as it deems necessary, to hold office during the pleasure of the board and upon such terms and conditions as the board may require.

"(7) To do all things necessary or convenient to carry out its functions. [Acts 1937, ch. 248, sec. 8; C. Supp. 1950, sec. 3695.34 (Williams, sec. 3695.33).]"

Bonds were issued by the Utility District in 1949 to obtain funds with which to make the initial construction and installation of water mains, etc. to serve the first 600 customers of the Utility District. In 1954, the unpaid 1949 bonds were called in and a new bond issue was made to pay the remainder of the 1949 bond issue and to obtain funds to lay additional mains and to take care of the increased business and customer load of the Utility District.

In the resolution providing for the bond issue in 1949 and in the resolution providing for the second bond issue in 1954, the Utility District reserved the right to make further extensions to the water and fire protection system by requiring the new customers to advance the cost of such extensions with a right of rebate for ten years of 50% of the income from said new extension. Such provisions of the bond resolution are are follows:

"Section 6.01. Application of Revenues.

"(E) Notwithstanding the foregoing provisions of the Section 6.01, or any other provisions of this Reso-

lution, the District hereby reserves the right to provide for further additions, extensions and improvements to the water and Fire Protection System, at the discretion of the District, through the installation thereof and payment therefor by use of the following methods or a combination thereof;

"(1) Further addition, extension and improvement costs may be paid by a user or users being, or to be, served or benefited by such further additions, extensions and improvements, and, in such event, the District may refund or rebate such costs, over a period of not exceeding ten (10) years, in annual amounts equal to, but not exceeding, fifty per cent (50%) of the gross charge for each metered connection of such user or users, and the metered charges for any such user or users, to the extent of any such refund or rebate, shall not be considered or accounted for as Revenues of the Water and Fire Protection System under the provisions of this Resolution.

"(2) Further addition, extension and improvement costs may be paid in part by a user or users, being, or to be, served or benefited by such further additions, extensions and improvements and in part by the District, and, in such event, the District shall not refund or rebate such costs paid by such user or users.

"(3) Further addition, extension and improvement costs may be paid by the District out of available excess revenues or moneys on deposit in the Extension and Expansion Fund."

The Utility District has assigned in this court some twenty-eight assignments of error. It would unduly

16

prolong this opinion to discuss each of these assignments of error separately. Substantially they raise three material, determinative questions for decision by this court:

(1) Was the original bill fatally defective because the bond holders were not made parties defendant and did the Chancellor err in failing to sustain the defendant's motion to dismiss?

(2) Did the complainant's bill state a cause of action entitling it to a declaratory judgment?

(3) Did the Chancellor err in holding that since the defendant Utility District was unable to furnish the necessary water services to the complainant under its franchise, the complainant, therefore, was free to contract for said water supply from the Light, Gas and Water Division of the City of Memphis or any other available source?

■ We find no merit in the contention of the Utility District that the bill is fatally defective for failure to make the bond holders parties defendant. The rights of the bond holders are not prejudiced or affected so long as those revenues of the Utility District which are pledged to the payment of the outstanding bonds are not diverted to other channels. While it is true the complainant's bill did ask, in the alternative, that the Utility District be required to construct water lines to complainant's subdivision, yet we think it clear that the real purpose of the bill was to obtain the relief which the Chancellor granted; namely, the right of complainant to obtain water from the Light, Gas and Water Division of the City of Memphis instead of from the defendant, Whitehaven Utility District.

The Chancellor expressly refused to order the District to build said lines. We have every reason to believe that if His Honor the Chancellor had deemed it proper to require the defendant Utility District to build new lines, he would not have ordered such lines built out of revenues which were pledged to pay the outstanding bonded indebtedness of the District. Cline v. Redbank Utility District, 194 Tenn. 255, 250 S. W. (2d) 362.

Hence, we think the Chancellor was correct in holding that the bond holders were not necessary parties to the bill and in overruling the defendant's motion to dismiss on this ground. All assignments of error relating to this action of the Chancellor are respectfully overruled.

With reference to the insistence by the Utility District that the Chancellor was without jurisdiction to entertain a bill for a declaratory judgment in this cause we quote the Code section under which said declaratory judgment is sought as follows:

"23-1103. Construction of statutes and written instruments.—Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder. (Acts 1923, ch. 29, sec. 2; Shan. Supp., sec. 4726a2; Code 1932, sec. 8836.)"

These salient facts appear uncontradicted in the record: The Chandler Investment Company, a property owner located within the territorial limits of the Whitehaven Utility District, had a tentative agreement with the Light, Gas and Water Division of the City of Memphis to obtain a water supply for its subdivision at a price and upon terms which complainant felt were more advantageous and preferable to the terms and conditions upon which it could obtain water from the defendant, Whitehaven Utility District. In our opinion the complainant was clearly authorized under the above quoted T. C. A. Section 23-1103 to file suit in the Chancery Court for a declaration by the Chancellor as to whether the complainant was required by law to purchase its water supply from the Whitehaven Utility District and whether it could complete its contract to obtain water from the Light, Gas and Water Division of the City of Memphis as it preferred to do.

While we differ with the Chancellor as to the result to be reached upon the trial of the case as hereinafter set out, yet we think the Chancellor was correct in assuming jurisdiction of the parties and the subject matter of this litigation. Clearly there was a justiciable controversy between the complainant and the defendant entitling the complainant to invoke the action of the Chancellor under the Declaratory Judgment Act. Cummings v. Beeler, 189 Tenn. 151, 223 S. W. (2d) 913.

Hence, the assignments of error relating to this question are respectfully overruled.

We turn now to the assignments of error assailing the action of His Honor the Chancellor in decreeing that the complainant is entitled to purchase water from the

Light, Gas and Water Division of the City of Memphis or any other source and enjoining the defendant, Whitehaven Utility District, from interfering with such contract. The Chancellor found that the Utility District was being operated and managed impartially and impersonally. There is no contention by the complainant that the directors of the District have acted arbitrarily or capriciously or that they have treated the complainant any different from other customers or potential customers in like circumstances. It is true, as above set out, that developers of subdivisions within the Utility District area have been required to finance the cost of the extension of water mains to their subdivisions whereas users of water along the mains already established by the Utility District have not been required to finance the construction cost.

The Chancellor found that it would be an unprofitable venture for the directors to issue bonds to defray the cost of the extension of service to the Adanac Gardens Subdivision.

██ We think the Chancellor correctly held that a mandatory injunction should not issue requiring the Utility District, at its own expense, to lay and install these water mains to serve the subdivision for two reasons. To use his words, ''First, under the decisions of our appellate courts the extensions of the District's mains is a matter of discretion; and second, if the Court undertook to enter such an order the Court could not enforce its order, the Utility District not having the funds to lay and install the mains.'' Horton v. Nashville, 72 Tenn. 39.

 We have no quarrel with the Chancellor's statement of the general rule that a franchise holder may not

deprive a potential customer of needed water, power, lights or any other utility when the holder of the franchise is not in a position to supply that which was contemplated it should have available under the terms of the franchise. Likewise, we agree with the insistence of appellant that the rights under a franchise may be lost by a non-user citing 43 Am. Jur., Public Utilities, Section 20.

However, in our opinion, the facts of this particular case make the general rules stated above inapplicable. The gravamen of the complaint by the Chandler Investment Company is not that it has been refused service from the Utility District but that it can procure water for its subdivision under terms that are more advantageous and preferable from the City of Memphis.

In the absence of an express provision in the franchise or charter obligation of a public service company requiring it to furnish the designated service to every inhabitant or property owner within its territory, the right of an inhabitant of such territory to demand an extension of service for his benefit is not absolute and unqualified but is to be determined by the reasonableness of the demand therefor under the circumstances involved. The law on this question seems to be well-stated in 43 Am. Jur. page 602 and we quote from said work as follows:

43 Am. Jur.—Public Utilities and Services—"Sec. 48. Reasonableness of Demand For Extension.—The right of an inhabitant or group of inhabitants of a community or territory served by a public service company to demand an extension of service for their benefit is not absolute and unqualified, but is to be

determined by the reasonableness of the demand therefor under the circumstances involved. The duty of a public service company to extend its service facilities, and the reasonableness of a demand for such extension, depend in general, upon the need and cost of such extension, and the return in revenue which may be expected as a result of the extension; the finanical condition of the utility; the advantages to the public from such an extension; and the franchise or charter obligation to make such extension. In this last respect, a water company may be compelled to extend its mains so as to supply all the inhabitants of the municipality by which it is franchised, if its charter requires it so to do. Furthermore, although a franchise ordinance provides that a water company need not extend its water mains along any ungraded street or alley, still, if the company has voluntarily extended its main along such a street, it cannot refuse to supply a customer thereon, on the theory that it was not compelled to build along that street in the first place.

"In regard to the reasonableness of the cost which an extension will entail, it is not necessary that a particular extension of service shall be immediately profitable, or that there shall be no unprofitable extensions, the criterion being generally whether the proposed extension will place an unreasonable burden upon the utility as a whole, or upon its existing consumers. As to the costs involved in making an extension, various elements, such as the type or quality of construction to be used and the use of any existing equipment or facilities, enter into the determination of this matter. But while the utility cannot fix

the limits of the proposed extension at territory which will yield an immediate profit, and, on the other hand, cannot be required to make unreasonable extensions, there is a point midway between these extremes at which the utility may require of the proposed consumer assistance in the necessary outlay in furnishing the service. In this respect, various methods have been adopted, depending upon the circumstances of the particular cases, in determining the amount of contribution or assistance which may be required. It has been held, however, that the utility cannot compel prospective customers to purchase stock as a condition precedent to extending its service.''

It is significant that the Chancellor did not hold that the requirement of the $88,000 deposit by the complainant, Chandler Investment Company, was unreasonable or excessive. What the Chancellor did hold was that the complainant was under no obligation, moral or legal, to make such advance in order to obtain water for its subdivision.

This is not a situation in which a property owner may obtain water from a source without advancing the cost of extension and is being required to advance the cost of extension from the other source. The charges made by the Utility District and by the City of Memphis are the same in principle. In either case the property owner will be required to make a deposit to defray the cost of extension of the water mains. When we consider that the complainant will not be entitled to a rebate of any of its deposit with the City of Memphis and will not have fire protection for the lots in its subdivision, there does

not seem to be too much difference dollarwise in the two contracts. The complainant obviously prefers to deal with the City of Memphis but the defendant's position is fortified by the fact that it is given the exclusive franchise by statute to furnish water within the District.

When the Chandler Investment Company bought the 178 acres of land for subdivision purposes in 1955 it was chargeable with notice that this land lay within the geographical limits of the Whitehaven Utility District. It was also chargeable with notice that the Whitehaven Utility District had been created under the authority of the statutes of Tennessee quoted above by the Quarterly County Court of Shelby County, Tennessee, and that the Whitehaven Utility District had the exclusive franchise for furnishing water to customers within its area.

Further, the Chandler Investment Company had the actual knowledge of the requirement by the Whitehaven Utility District that developers of subdivisions must make a deposit of the cost of extension of water mains to said subdivisions with right of rebate as above set out because the Chandler Investment Company had already developed one subdivision within the area and had made a deposit of $55,000 for water service as required by the Utility District.

As we interpret the provisions of the Code section under which the Whitehaven Utility District was established quoted above, we do not understand that the Utility District is required to furnish water, fire protection and/or sewer service to every inhabitant or property owner within the district. On the contrary, T. C. A. Section 6-2625 indicates that it was the legislative intent that the Utility District operate a system that was at all

times profitable and sufficient to pay the operation costs and amortize the bonds which were obtained to make the necessary capital outlay.

Also the last sentence in T. C. A. Section 6-2607 shows clearly that the legislature contemplated that any utility district created under this act might not be able to render services to all of the inhabitants within the district. We again quote said sentence: "So long as the district continues to furnish any of the services which it is herein authorized to furnish, it shall be the sole public corporation empowered to furnish such services in the district unless and until it shall have been established that the public convenience and necessity requires other or additional services."

If the decree of the court below is permitted to stand the result will be to amend by judicial decree the act of the Legislature of Tennessee and permit another public service corporation, the Light, Gas and Water Division of the City of Memphis, to begin operating within the area of the Whitehaven Utility District without the prior determination of public convenience and necessity prescribed in T. C. A. Section 6-2607 quoted above.

The Chancellor properly held that the Chancery Court had no authority to declare this public convenience and necessity because the act authorizing such utility district provides otherwise. (Tr. page 180.)

The provisions of T. C. A. Section 6-2607 quoted above provide the only method by which the exclusive franchise awarded to the Whitehaven Utility District may be modified; i. e., that the Quarterly County Court of Shelby County adjudicate that the public convenience and neces-

sity requires other or additional services. Hence, we hold that the sole recourse available to the Chandler Investment Company, if it is dissatisfied with the services offered by the Whitehaven Utility District, is to petition the Quarterly County Court of Shelby County under the authority of T. C. A. Section 6-2607 to establish that the public convenience and necessity requires that the exclusive franchise to furnish water, fire protection and sewerage service granted to the Whitehaven Utility District be modified so as to permit other agencies, possibly the City of Memphis Light, Gas and Water Division, to furnish water to the complainant and other potential customers within the vicinity of complainant's subdivision.

It is the opinion of this Court that His Honor the Chancellor was in error in authorizing the complainant to purchase water from the City of Memphis or any other source just as if its property were not within the Utility District and in enjoining the Utility District from interfering with such contract.

A decree will be entered in this court in accordance with this opinion reversing the decree of the court below and dissolving the injunction.

The complainant, Chandler Investment Company, will be taxed with the costs in the court below and on this appeal.

Avery, P. J. (Western Section), and Bejach, J., concur.