608

PEOPLES TELEPHONE Co., INC., Appellants,

*v.*

TENNESSEE PUBLIC SERVICE COMMISSION and Southern Bell Telephone & Telegraph Company, Appellees.

393 S.W.2d 285.

(*Nashville,* December Term, 1964.)

Opinion filed August 23, 1965.

FARRIS, EVANS & EVANS, Nashville, CLARENCE EVANS, Nashville, of counsel, for Peoples Telephone Co.

GEORGE SHUFF, General Counsel, Nashville, for Tennessee Public Service Commission.

BASS, BERRY & SIMS, Nashville, J. O. BASS and T. G. PAPPAS, Nashville, of counsel, for Southern Bell Tel. & Tel. Co.

MR. JUSTICE DYER delivered the opinion of the Court.

This case involves a controversy between two telephone companies over which is to serve a small, apparently isolated, area lying in the northwest part of Humphreys County adjoining Houston County. In this opinion appellant, Peoples Telephone Company, will be referred to

as ''Peoples''; the appellees, Southern Bell Telephone Company, as ''Bell'' and the Tennessee Public Service Commission as ''Commission.''

Prior to 1963, with minor exceptions, Peoples served Houston County and Bell served Humphreys County. Also prior to 1963 neither Peoples nor Bell had any physical facilities for telephone service in this disputed area. In December 1961 Coleman Hooper, a resident of this disputed area, applied to Bell for service and was told there would be an extra charge of about $2000.00. In 1962 another resident of this area applied to Bell and was told there would be an extra charge of $120.00. Neither of these applicants elected to receive service on the basis offered.

In April 1963 Peoples contacted Bell proposing to build an access line from their facilities in Houston County along a road that ran through this disputed area in Humphreys County and then turned north back into Houston County. The purpose of this access line was for Peoples to reach possible subscribers in the western end of Houston County. Bell made no objection to the construction of this access line. A short time later Peoples informed Bell that Coleman Hooper, who had previously requested service of Bell, would like to receive telephone service and it could serve him off this access line since it passed close to his residence in Humphreys County. Bell objected to Peoples serving Hooper on the ground it would violate their established service area. Peoples completed this access line sometime during the first half of 1963 and installed service for Hooper and one other subscriber in Humphreys County.

On 5 July 1963 Peoples filed its petition with the Commission seeking a certificate of convenience and necessity

to furnish telephone service to this area in Humphreys County. This petition and supplemental petitions together with the pleadings filed by Bell pointed up the critical issue; which company should serve this disputed area.

Peoples and Bell are public utilities within the definition of T.C.A. sec. 65-401 and subject to the jurisdiction of the Commission. Under the practices and procedures of the Commission regulated telephone companies file their tariffs which includes service area maps designating the area they offer to serve in accord with the tariff. Tariffs and service area maps become effective on filing date unless suspended or disapproved by the Commission.

The Commission found Bell had for several years prior to this controversy included the disputed area in its tariffs and maps filed for the Waverly Exchange Service Area. That said tariffs and map filed by Bell were not suspended or disapproved by the Commission and at the time they were filed this area was not receiving service from any public utility and Bell, under T.C.A. sec. 65-415, was not required to obtain a certificate of convenience and necessity in order to provide service for the area. That tariffs and maps filed by Peoples did not include this disputed area. That Bell had offered to serve all applicants from the area in accord with its tariffs and no resident of the area had filed complaint with the Commission as to the adequacy of the facilities of Bell to meet the reasonable needs of the public within the area. That this area was not a territory "not therefore receiving service of a like character from another public utility" within the meaning of T.C.A. sec. 65-415. The Commission dismissed the petition of Peoples for a certificate of convenience and necessity and further Peoples was ordered to discontinue service in the area.

The Chancellor sustained the Commission holding the facts found by the Commission were abundantly supported by the record and the disputed area, at the time Peoples extended its line therein and gave service, was a "territory already receiving a like service from another public utility" within the meaning of the first part of T.C.A. sec. 65-415.

The determinative question here on appeal is: whether this disputed area, by being included in the tariffs and service area maps filed by Bell, became a "territory already receiving a like service," within the meaning of T.C.A. sec. 65-415, even though Bell had no physical plant in the area providing service. This will require a construction of T.C.A. sec. 65-415 the pertinent parts being as follows:

65-415. Certificate of public convenience and necessity. —No public utility shall establish or begin the construction of, or operate any line, plant, or system, or route in or into a municipality or other *territory* already receiving a like service from another public utility, or establish service therein, without first having obtained from the railroad and public utilities commission, after written application and hearing, a certificate that the present or future public convenience and necessity require such construction, establishment, and operation, * * *; provided, that this section shall not be construed to require any public utility to obtain a certificate for an extension in or about a municipality or territory where it shall theretofore have lawfully commenced operations, or for an extension into territory, whether within or without a municipality, contiguous to its route, plant, line, or system, and not theretofore receiving service of a like character from

another public utility, or for substitute or additional facilities in or to territory already served by it. (emphasis supplied)

The legislature by Chapter 4 of Title 65, T.C.A. has provided a plan for the regulation of public utilities. T.C.A. sec. 65-415 would be construed in pari materia with the other sections of Chapter 4.

■ The filing of tariffs and maps, by a utility, is more than just a claim on territory. Such action places on the utility a legal obligation to serve all alike within the territory in accord with its tariffs. T.C.A. sec. 65-414 empowers the Commission to require a public utility to make reasonable and practicable extensions of its existing facilities, which power to order extensions would be to that area within the territory claimed by the utility under its tariffs and maps on file with the Commission. We think this lends support to the argument the word "territory," as used in T.C.A. sec. 65-415, would include all the area within the territory a public utility had offered and became liable to serve, whether the public utility had their physical facilities in every part thereof or not. Stated in another way this code section (65-414) recognizes there could be areas within the territory of a public utility which for various reasons (mostly economic) were not actually receiving service nor in fact had any physical facilities located therein.

■ Construing the meaning of the word "territory", as such is used in the first part of T.C.A. sec. 65-415, by examination of this statute as a whole and taking into consideration the other code sections of Chapter 4, all of which are a part of the statutory plan governing public utilities in this state, we think this word so used included the area in dispute since such area was in the territory

Bell offered to serve by including it in its tariffs and maps on file with the Commission which had not been suspended or disapproved. Further we think the construction we have placed on the word "territory" in this statute is necessary to orderly administration and supervision of public utilities by the Commission.

■ It is argued here construing this word "territory" as we have done gives Bell a monopoly over an area in which it had no physical facilities nor have ever received a certificate of convenience and necessity covering said area from the Commission. It should be first noted the Commission and the Chancellor found Bell included this area in its service area out of Waverly at a time the area was not receiving service from any other public utility nor was it included under the tariffs and map by any other public utility. The record supports this finding. Even so we do not agree Bell had a monopoly as that word is commonly understood. T.C.A. sec. 65-417 empowers the commission to authorize a competing service under certain criteria set out in the code section.

Judgment affirmed.