IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
APRIL 18, 2007 Session

**DYERSBURG SUBURBAN CONSOLIDATED UTILITY DISTRICT
v. THE CITY OF DYERSBURG, ET AL.**

**Direct Appeal from the Chancery Court for Dyer County
No. 06C139      J. Steven Stafford, Chancellor**

_____

**No. W2006-01704-COA-R3-CV - Filed June 29, 2007**

_____

This appeal involves a dispute between a city and a rural water association as to which entity is entitled to provide water service to a proposed subdivision. The rural association has a defined service district in which it is empowered to provide water service, and most of the disputed property lies within the rural association's boundaries. However, the city annexed the proposed subdivision and now claims that it has the exclusive right to provide water service to the property. The rural association argues that 7 U.S.C. § 1926(b), the Anti-Curtailment Provision of the Consolidated Farm and Rural Development Act, protects its service area and prohibits the city from providing water service to the property. The trial court granted summary judgment to the city, finding the federal statute inapplicable. For the following reasons, we affirm in part, reverse in part and remand for further proceedings.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part,
Reversed in Part and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

John W. Palmer, Jason Ladon Hudson, Dyersburg, TN, for Appellant

John M. Lannom, James Sampson Wilder, III, Dyersburg, TN, for Appellee

Donald Lee Scholes, Nashville, TN, for _Amicus Curiae_, Tennessee Association of Utility Districts

## OPINION

### I. FACTS & PROCEDURAL HISTORY

Dyersburg Suburban Consolidated Utility District ("DSCUD") is a public utility district that provides water service to areas of Dyer County, Tennessee. DSCUD's district service boundaries were established by 1961 Tenn. Priv. Acts ch. 287. The City of Dyersburg ("the City") is a municipal corporation also located in Dyer County. The City provides water and sewer service within and beyond its city limits.

On June 22, 2005, Pennwards Associates, L.P., ("the Developer") purchased approximately 73 acres of undeveloped farmland west of the city limits of Dyersburg, which is designated as Parcel 97 on the county tax assessor's map. The southernmost two-thirds of the parcel lies within DSCUD's district service boundaries. The Developer has proposed to subdivide the property into a 182-lot subdivision known as Creek Wood Subdivision. On July 18, 2005, the City approved annexation of the entire parcel, and the relevant ordinance stated: "Water for domestic is currently provided. Thereafter the annexation new lines will be extended in accordance with the established policies of the City of Dyersburg."

On October 13, 2005, Mr. Ben Edwards, co-owner of the Developer, attended DSCUD's Commissioners' meeting and requested that DSCUD provide water service to the proposed Creek Wood Subdivision. Specifically, he requested that DSCUD install a water line connecting DSCUD's closest existing water line along Highway 104 to the southern boundary of the subdivision. The new water line would have to cross over another farm, but Mr. Edwards proposed that the line could be installed along a sewer easement that the Developer was obtaining across the farm. The DSCUD Commissioners unanimously passed a motion to install the water line to the subdivision at DSCUD's expense.

Apparently, the Developer subsequently abandoned its plan to obtain water from DSCUD, and the City installed a water line to the northern boundary of the property with intentions of providing water to the entire subdivision, including the area within DSCUD's service boundaries. DSCUD filed the present action against the City and the Developer on March 29, 2006, requesting a declaratory judgment regarding its boundaries and its right to supply water within its boundaries, and it sought an injunction preventing the City from installing water lines within DSCUD's service area and otherwise interfering with DSCUD's service rights.

The City and the Developer filed motions to dismiss the complaint for failure to state a claim, asserting that when the City annexed the property, it gained the exclusive right to provide water service to the area. Both defendants also claimed that any disputes between an annexing municipality and an existing utility district must be arbitrated pursuant to Tenn. Code Ann. § 6-51-111. In response, DSCUD claimed that 7 U.S.C. § 1926(b) protected its service area from any encroachment by an annexing municipality because DSCUD is a rural water association with outstanding debts to Rural Development, an agency of the United States Department of Agriculture.

Both parties submitted affidavits in support of their arguments, and the trial court treated both defendants' motions to dismiss as motions for summary judgment.

On July 5, 2006, the court entered an order dismissing all claims against the Developer, finding that no claim had been stated against the Developer, and that the Developer was not a proper party to the lawsuit. The court designated its order as final pursuant to Tenn. R. Civ. P. 54.02.

On July 17, 2006, an order was entered granting the City's motion for summary judgment. The trial court determined that although the disputed property was located mostly within DSCUD's defined service area, DSCUD had not actually provided or made water service available to the property, and therefore it was not entitled to the protection of the federal statute. This finding was based upon the fact that, in order to serve the subdivision, DSCUD would have to extend a line approximately 1900 feet across another farm, and DSCUD did not presently have an easement authorizing it to do so. Because the court found the federal statute inapplicable, it held that the City had the exclusive right to serve the property it annexed under state law, and that any disagreements must be arbitrated.

On August 10, 2006, DSCUD filed its notice of appeal of the trial court's order granting summary judgment to the City.

## II. ISSUES PRESENTED

Appellant has timely filed its notice of appeal and presents the following issue, as we perceive it, for review:

> Whether the trial court erred in granting the City's motion for summary judgment and finding that T.C.A. § 6-51-111 applied rather than Title 7 of the United States Code § 1926(b), because a disputed issue of fact existed as to whether DSCUD provided or made water service available to the property.

For the following reasons, we reverse the decision of the chancery court and remand for further proceedings.

## III. STANDARD OF REVIEW

No presumption of correctness attaches to a trial court's findings in a summary judgment case. **Burgess v. Harley**, 934 S.W.2d 58, 62 (citing *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995)). A summary judgment is appropriate only when there is no genuine dispute of material fact with regard to the claim or defense asserted in the motion, and when the moving party is entitled to a judgment as a matter of law. **Id.** (citing *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993)).

The critical focus is limited to those facts deemed "material," meaning facts that must be decided in order to resolve the substantive claim or defense at which the motion is directed. ***Byrd v. Hall***, 847 S.W.2d 208, 211 (Tenn. 1993). We must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. ***Id.*** at 210-11 (citations omitted). A court is not to weigh the evidence in evaluating a summary judgment motion. ***Id.*** at 211. A summary judgment should not be affirmed if any doubt or uncertainty exists with regard to the facts or the conclusions to be drawn from the facts. ***Burgess***, 934 S.W.2d at 62 (citing *Carvell*, 900 S.W.2d at 26; *Byrd*, 847 S.W.2d at 211). When the evidence establishes a disputed fact, and the fact is material, the court must then determine whether the disputed material fact creates a genuine issue. ***Byrd***, 847 S.W.2d at 215. The test for a "genuine issue" is whether a reasonable jury could legitimately find in favor of one side or the other. ***Id.***

"[T]he party seeking summary judgment must carry the burden of persuading the court that no genuine and material factual issues exist and that it is, therefore, entitled to judgment as a matter of law." ***Byrd***, 847 S.W.2d at 211. Summary judgment will be appropriate when, after being given a reasonable opportunity to substantiate its claims, the nonmoving party is unable to establish an essential element of its case on which it will have the burden of proof at trial. ***Id.*** (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 321-25, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)).

## IV. DISCUSSION

### A. *DSCUD's rights within its service area before annexation*

As previously mentioned, DSCUD is a public utility district. Tenn. Code Ann. § 7-82-301(a)(1) (2005) addresses a utility district's status and provides, in relevant part:

> From and after the date of the making and filing of an order of incorporation, the district so incorporated shall be a "municipality" or public corporation in perpetuity under its corporate name, and the district shall in that name be a body politic and corporate with power of perpetual succession, but without any power to levy or collect taxes. . . . So long as the district continues to furnish any of the services that it is authorized to furnish in this chapter, *it shall be the sole public corporation empowered to furnish such services in the district*, and no other person, firm or corporation shall furnish or attempt to furnish any of the services in the area embraced by the district, unless and until it has been established that the public convenience and necessity requires other or additional services; provided, that this chapter shall not amend or alter §§ 6-51-101--6-51-111, and 6-51-301.

(emphasis added).

-4-

This statute prevents cities from providing water service in utility districts' service areas without a determination that public convenience and necessity requires additional services. For example, in *Chandler Inv. Co. v. Whitehaven Util. Dist. of Shelby County*, 44 Tenn. App. 1, 4, 311 S.W.2d 603, 604 (Tenn. Ct. App. 1957), a developer was constructing a subdivision on property that was located within the geographical boundaries of the Whitehaven Utility District, but just outside the Memphis city limits. The developer inquired about the availability of water service from the Whitehaven District and was told that water lines would need to be extended approximately two miles to the property, requiring a partially refundable deposit of $88,000 from the developer. *Id.* at 6, 311 S.W.2d at 605. The City of Memphis had water mains extending within 100 feet of the proposed subdivision but also required a large deposit. *Id.* at 7, 311 S.W.2d at 606. The developer sought and received a declaratory judgment allowing it to contract with the City of Memphis in order to obtain more advantageous terms of service. *Id.* at 9, 311 S.W.2d at 606. On appeal, this Court reversed, finding that the City of Memphis could not operate within the Whitehaven Utility District without a prior adjudication that public convenience and necessity required additional services in the district. *Id.* at 24, 311 S.W.2d at 613.

More recently, in *Town of Rogersville, ex rel. Rogersville Water Comm'n v. Mid Hawkins County Util. Dist.*, 122 S.W.3d 137, 140 (Tenn. Ct. App. 2003), we held that the *sole* remedy available to parties dissatisfied with a utility's service is to petition to modify the utility's exclusive franchise under Tenn. Code Ann. § 7-82-301(a). Also, in determining whether public convenience and necessity requires additional services, it is inappropriate to perform a "comparative analysis" between the two service providers. *Id.* at 140, n.2. Instead, the inquiry is whether the utility district refuses or is not able to provide utility service to that area. *Id.*

In this case, prior to the City's annexation of the Creek Wood property, Tenn. Code Ann. § 7-82-301(a)(1) empowered DSCUD with the exclusive right to furnish water services within its district[1] unless and until it was established that public convenience and necessity required additional services. However, the City claims that once it annexed the parcel, an additional statute was triggered giving it the exclusive right to provide service to properties within its boundaries. We now turn to an examination of that statute.

### B. The City's rights when it annexes property

The City claims that, upon annexation, it gained the exclusive right to provide utilities to the property as provided in Tenn. Code Ann. § 6-51-111 (2005), as follows:

> (a) Upon adoption of an annexation ordinance or upon referendum
> approval of an annexation resolution as provided in this part, an
> annexing municipality and any affected instrumentality of the state of
> Tennessee, including, but not limited to, a utility district, sanitary

---

[1] As previously noted, only two-thirds of the disputed parcel lies within DSCUD's service boundaries. DSCUD does not claim any right to provide service to the northern one-third of the property that lies outside its district.

district, school district, or other public service district, shall attempt to reach agreement in writing for allocation and conveyance to the annexing municipality of any or all public functions, rights, duties, property, assets and liabilities of such state instrumentality that justice and reason may require in the circumstances. . . . *The annexing municipality, if and to the extent that it may choose, shall have the exclusive right to perform or provide municipal and utility functions and services in any territory that it annexes*, notwithstanding § 7-82-301 or any other statute, subject, however, to the provisions of this section with respect to electric cooperatives.

(b) Subject to such exclusive right, any such matters upon which the respective parties are not in agreement in writing within sixty (60) days after the operative date of such annexation shall be settled by arbitration with the laws of arbitration of the state of Tennessee . . . .

(emphasis added). This statute clearly allowed the City to choose to provide utility functions in the area it annexed despite DSCUD's rights under Tenn. Code Ann. § 7-82-301. The statute is said to express the Legislature's intention that before any corporation may furnish utility services within the territory of a municipality, it must have the permission of that municipality even where the corporation has, as is the case here, been serving the area before it became a part of the municipality. *Franklin Power & Light Co. v. Middle Tenn. Elec. Membership Corp.*, 222 Tenn. 182, 188, 434 S.W.2d 829, 831 (Tenn. 1968). Although an annexing municipality can allow a current utility provider to continue serving the area, the municipality acquires the exclusive right to make the election, and a current provider has no authority to refuse to arbitrate as required by the statute. *City of Lenoir City v. State ex rel. City of Loudon*, 571 S.W.2d 297, 299 (Tenn. 1978).

Notwithstanding the unambiguous language of Tenn. Code Ann. § 6-51-111 granting the City exclusive rights to serve an area it annexes, DSCUD claims that 7 U.S.C. § 1926(b) prevents the City from doing so in this case.

### C.    The Protection of § 1926(b) for Rural Water Associations

Congress passed the Agricultural Act of 1961 seeking to preserve and protect rural farm life in a number of respects. *Le-Ax Water Dist. v. City of Athens, Ohio*, 346 F.3d 701, 704 (6th Cir. (Ohio) 2003). Title III of the Act, known as the Consolidated Farm and Rural Development Act, was largely concerned with issues of agricultural credit. *Id.* One section of the Act, now codified at 7 U.S.C. § 1926(a), made federal loans available to water service associations. *Id.* Section 1926(b), which is called the Anti-Curtailment Provision of the Act, protected the recipients of such loans from competition, to a certain extent, and it reads:

(b) Curtailment or limitation of service prohibited –

> The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

7 U.S.C. § 1926(b). Basically, this provision "prevents local governments from expanding into a rural water association's area and stealing its customers." *Le-Ax*, 346 F.3d at 705. The legislative history indicates that § 1926(b) was intended to protect the territory served by rural water associations from other competitive facilities such as local governments, as otherwise rural water service might be threatened by municipalities expanding their boundaries into areas served by rural systems. *Id.*

The Act aims to provide fresh and clean water to rural households, and to protect the federal government as insurer of the loans to the rural associations. *Le-Ax*, 346 F.3d at 705. By protecting a rural water association's customer base, the association can spread its fixed costs over a large group of users and prevent costs from becoming prohibitively expensive to any particular rural user. *Id.* As one court observed, to allow expanding municipalities to "skim the cream" by annexing and condemning the parts of a water association with the highest population density (and thus the lowest per-user cost) would undermine Congress's purpose of facilitating inexpensive water supplies for rural residents. *City of Madison, Miss. v. Bear Creek Water Ass'n, Inc.*, 816 F.2d 1057, 1060 (5th Cir. (Miss.) 1987).

In order to state a claim under § 1926(b), a plaintiff must establish that (1) it is an "association" within the meaning of the Act; (2) it has a qualifying outstanding Farmers Home Administration (FmHA) loan;[2] and (3) it has "provided or made service available" in the disputed area. *Le-Ax*, 346 F.3d at 705. Section 1926(b) has been construed as "unambiguously prohibiting any curtailment or limitation of an FmHA-indebted water association's services resulting from municipal annexation or inclusion." *Lexington-S. Elkhorn Water Dist. v. City of Wilmore, Ky.*, 93 F.3d 230, 235 (6th Cir. (Ky.) 1996) (quoting *Bear Creek Water Ass'n*, 816 F.2d at 1059). The provision is to be given a liberal interpretation that protects rural water associations indebted to the FmHA from municipal encroachment. *Id.*

In the present case, the parties do not dispute that DSCUD is an "association" within the meaning of the Act with qualifying FmHA loans. Therefore, the key issue is whether DSCUD has "provided or made service available" to the disputed parcel. Section 1926(b), by its terms, provides

---

[2] The former Farmers Home Administration is now known as the U.S. Department of Agriculture Rural Utilities Service. *See* 7 C.F.R. § 1780.3(a). For purposes of our analysis, we will continue to refer to the relevant agency as FmHA in order to avoid confusion.

that "service *provided or made available* through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation . . . ." (emphasis added). Unfortunately, neither the statute itself nor the legislative history explains this phrase.[3] *Le-Ax*, 346 F.3d at 705. The mere fact that the disputed property is located within DSCUD's defined service area does not automatically mean that DSCUD made service available to the Creek Wood property. *See Lexington-S. Elkhorn*, 93 F.3d at 233 (finding service was not made available even though the property was within the utility's defined territorial boundary). Different federal circuits use different factors to determine whether a water association has "provided or made service available," but the Sixth Circuit uses a two-part test.[4] *Le-Ax*, 346 F.3d at 706. First, we consider what has been described as the "pipes in the ground" or "physical ability" requirement. *Id.* Second, we look to whether the association has "the legal right under state law to serve the area in question." *Id.*

Regarding the first "pipes in the ground" element, the parties agree that DSCUD has not actually provided water service to the disputed property. The Creek Wood property and its neighboring parcels are currently undeveloped farmland. "If an association does not already have service in existence, water lines must either be within or adjacent to the property claimed to be protected by Section 1926(b) prior to the time an allegedly encroaching association begins providing service in order to be eligible for Section 1926(b) protection." *Lexington-S. Elkhorn*, 93 F.3d at 237. Integral to the concept of making service available is the *capability* of providing service, or, at a minimum, of providing the service within a reasonable time after a request for service is made. *Town of Rogersville, ex rel. Rogersville Water Comm'n v. Mid Hawkins County Util. Dist.*, 122 S.W.3d 137, 141 (Tenn. Ct. App. 2003).

For example, in *Village of Grafton v. Rural Lorain County Water Auth.*, 419 F.3d 562, 564-66 (6th Cir. (Ohio) 2005), a rural water association had transmission lines "running up to" the subdivision at issue that could be extended to supply water "overnight," and this met the "pipes in the ground" requirement. However, in *Le-Ax*, the Sixth Circuit clarified that it is not necessary that a rural association be able to provide service immediately. 346 F.3d at 707. The rural association in that case had a water line immediately adjacent to the disputed property, but it would need to install a pressure-reducing valve, some tap-ins, and a pumping station before it could actually provide service. *Id.* The court determined that an association can have the *physical ability* to serve

---

[3] It is clear that in determining whether a rural association has "made service available" to a property, we are not to relatively compare the services offered by the City with those offered by DSCUD. *See Robertson Properties, Inc. v. Detachment of Territory from Public Water Supply Dist. No. 8 of Clay County*, 153 S.W.3d 320, 328 (Mo. Ct. App. 2005) ("Whether it is easier or cheaper for [a city] to provide service is irrelevant. The test is simply whether the District has made service available to this area."); *but see Rural Water Dist. No. 1, Ellsworth County, Kansas v. City of Wilson, Kansas*, 243 F.3d 1263, 1271 (10th Cir. (Kan.) 2001) (if costs were so excessive as to practically deprive a user of service, then service may not have been "available").

[4] The Sixth Circuit has adopted the same approach that the Eighth and Tenth Circuits have taken. *See Le-Ax*, 346 F.3d at 706 (discussing the various factors used by different circuits).

a property within the meaning of the "pipes in the ground" test even if additional work would have to be done. *Id.* The court noted:

> To argue, as Athens does, that water service must be available immediately (evidently in the sense that someone at University Estates must be able to go over to the faucet and turn on the water), would be to ignore our statement in *Lexington-S. Elkhorn* that the "made available" requirement is satisfied not only when the pipes are "within," but also when they are merely "adjacent to" the property. The evidence here admits of only one conclusion, that Le-Ax "has adequate facilities within or adjacent to the area to provide service to the area within a reasonable time after a request for service is made." (quoting *Sequoyah County Rural Water Dist. No. 7 v. Town of Muldrow*, 191 F.3d 1192, 1203 (10th Cir.1999)).

*Le-Ax*, 346 F.3d at 707. *See also* **Pittsburg County Rural Water Dist. No. 7 v. City of McAlester**, 358 F.3d 694, 713 (10th Cir. (Okla.) 2004) (rural association need not be able to provide service "today," if it has adequate facilities adjacent to the area and can provide service within a reasonable time).

In **Sequoyah County Rural Water Dist. No. 7 v. Town of Muldrow**, 191 F.3d 1192, 1205 (10th Cir. (Okla.) 1999), a rural water association had water lines approximately one mile away from a certain disputed property that could be extended to meet the customer's needs for approximately $50,000. The Tenth Circuit held that this constituted sufficient evidence for the association to withstand summary judgment with respect to whether its facilities were sufficiently proximate to the customer and whether it had the capacity to serve the customer within a reasonable time. *Id.*

> In short, although additional clarifying proof may be needed to establish the exact distances between Plaintiff's lines and the disputed customers' properties, as well as Plaintiff's precise capacity to serve the disputed customers within a reasonable time, we conclude that Plaintiff has established genuine issues of material fact with respect to whether it made service available to the customers. Indeed, the . . . evidence showing longer distances between Plaintiff's pipes and the customers' properties clearly raises questions of fact on the issue of proximity. Viewing the evidence in a light most favorable to Plaintiff, we therefore conclude that summary judgment was improper on the issue of whether Plaintiff made service available . . . .

*Id.* at 1205-1206. On the other hand, when an association has demonstrated merely a desire and ability to provide service to a disputed area in the future, the protections of § 1926(b) are not triggered. *See* **N. Ohio Rural Water v. Erie County Bd. of County Comm'rs**, 347 F. Supp. 2d 511, 515 (N.D. Ohio 2004) (plans to provide service to area including a main highway and surrounding roads was insufficient when existing water lines were only in areas surrounding the disputed territory).

In the case at bar, we find that DSCUD presented sufficient evidence to withstand summary judgment as to whether it had "pipes in the ground" to serve the disputed property. DSCUD's district manager stated in her affidavits that service was available to the property at issue, Parcel 97, by virtue of DSCUD's water line running along the parcel to the immediate south, Parcel 96. She also stated that DSCUD had a water line running along Parcel 95 to the immediate east of the disputed property. And finally, DSCUD had a third accessible line running along the property to the immediate west of the Creek Wood property, which is Parcel 98. The manager also stated that DSCUD could install a water line to the boundary of the Creek Wood Subdivision within a reasonable, relatively short amount of time. She further explained the situation involving the motion passed at the DSCUD Commissioners' meeting, whereby the association had agreed, at the Developer's request, to install the necessary water line at its own expense connecting with the water line south of the property.

The City claimed that the association did not have the requisite "pipes in the ground" because DSCUD's closest water line was 1980 feet, or 0.375 miles, from the boundary of the Creek Wood property. However, we do not consider this fact to be fatal to DSCUD's § 1926(b) claim, entitling the City to a judgment as a matter of law. In *Sequoyah County*, 191 F.3d at 1205, genuine issues of fact existed as to whether service was made available to a certain parcel even though the association's water lines were approximately one mile away. And as noted in *Le-Ax*, the Act contemplates that additional work will need to be done in order to serve a property, and it is not necessary that someone at the property can "go over to the faucet and turn on the water." 346 F.3d at 707. Although additional proof will be necessary to determine DSCUD's precise capacity to serve the property within a reasonable time, at the time of the proceedings below, the Developer had yet to record a final approved plat of the subdivision so the parties did not even know how many lots would be located in each district.[5] We believe that at least a genuine issue of fact existed as to whether DSCUD had "adequate facilities within or adjacent to the area to provide service to the area within a reasonable time after a request for service is made." *Le-Ax*, 346 F.3d at 707 (quoting *Sequoyah County*, 191 F.3d at 1203).

---

[5] The City also claimed that because it will be providing sewer services to the entire subdivision, allowing DSCUD to provide water service to part of the subdivision will be confusing and difficult. However, courts have routinely held that § 1926(b) was enacted to cover water service, and an association's ability to provide other services is irrelevant to its entitlement to § 1926(b) protection. *See Sequoyah County*, 191 F.3d at 1204, n.10 (association's ability to provide fire protection is irrelevant); *Robertson Properties, Inc. v. Detachment of Territory from Pub. Water Supply Dist. No. 8 of Clay County*, 153 S.W.3d 320, 326 (Mo. Ct. App. 2005) ("a District supplying water to fight fires or facilities for sewer collection simply should not enter into a Section 1926 analysis").

Next, we consider DSCUD's legal right under state law to serve the area in question.[6] The Sixth Circuit has only required a state law right (not a duty) to serve the area in order to invoke the protections of § 1926(b). *Le-Ax*, 346 F.3d at 706, n.1.

The City first contends that DSCUD lacked the legal right to serve the property because it would have to obtain an easement across a private farm to access its closest line, and DSCUD had not yet obtained an easement. However, we do not consider DSCUD's lack of an easement at this point as preventing it from having the legal right under state law to provide service to the property. DSCUD has the power to purchase or condemn a right of way for its pipelines pursuant to Tenn. Code Ann. § 65-27-101 (1993). The district manager of DSCUD explained in her affidavit that DSCUD had relied upon the actions of the Developer in persuading the association to use the sewer easement that it was obtaining across the farm, so DSCUD had not yet attempted to obtain an easement itself. Furthermore, because it is sufficient for an association to have lines adjacent to a property, we believe the Act encompasses an understanding that an association will have to obtain an easement before it can extend those lines. As DSCUD noted, it would have to obtain an easement regardless of whether it was extending its line ten feet or one thousand feet. To require DSCUD to have an easement already in place in order for § 1926(b) protection to attach would in effect require associations to have undescribed, universal easements on properties, even before the need to extend its lines or the threat of municipal encroachment had arisen. *See Lexington-S. Elkhorn*, 93 F.3d at 237 (service must have been available prior to the time an allegedly encroaching association begins providing service in order to be eligible for Section 1926(b) protection). This would not serve the purposes of the Act and would certainly not be a liberal interpretation of the Act's requirements that protected rural water associations. *See id.* at 235.

The City only cites to one case in which a rural association's failure to obtain an easement prevented it from having the legal right to serve a property. In *N. Ohio Rural Water v. Erie County Bd. of County Comm'rs*, 347 F.Supp.2d 511, 515 (N.D. Ohio 2004), an association had not yet complied with 7 C.F.R. 1780.44(g)(1), which requires associations applying for a federal loan or grant to fund a water project to have acquired any necessary easements prior to obtaining a loan, and the court found that the association faced "significant legal hurdles" before it could do so. There is no indication in this case that DSCUD will be applying for a water project loan to extend its line so that it would be required to comply with this regulation.

Next, the City argues that DSCUD did not have the legal right under state law to serve the property because Tenn. Code Ann. § 6-51-111 took away DSCUD's exclusive right when the City

---

[6] In *Lexington-S. Elkhorn*, the water association did not have the legal right to serve the property in question because it had not obtained a "Certificate of Convenience and Necessity" from the Kentucky Public Service Commission to extend its lines into that area. 93 F.3d at 238. Without having requested the authority to construct the facilities needed to serve the area at issue, the availability of service from the association was merely speculative. *Id.* The parties in this case did not allege that DSCUD faced such an obstacle to providing service. In Tennessee, a utility is not required to obtain such a certificate to provide extensions of service within its own defined territory. Tenn. Code Ann. § 65-4-201(a) (Supp. 2006); *see Peoples Tel. Co. v. Tenn. Pub. Serv. Comm'n*, 216 Tenn. 608, 613, 393 S.W.2d 285, 287 (Tenn. 1965).

annexed the property. As previously discussed, DSCUD had the exclusive right, prior to the annexation, to provide water service in its district pursuant to Tenn. Code Ann. § 7-82-301(a)(1). Where federal § 1926(b) protections have attached, § 1926(b) preempts local or state law that can be used to justify a municipality's encroachment upon a disputed area in which the indebted association is legally providing service under state law. *Pittsburg County Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 715 (10th Cir. (Okla.) 2004). Section 1926 takes precedence over inconsistent state law pursuant to the Supremacy Clause, U.S. Const. art. VI, cl. 2, which states that laws of the United States made in pursuance of the Constitution shall be the supreme law of the land, and judges of every state are bound thereby. *Robertson Properties, Inc. v. In the Matter of the Detachment of Territory from Pub. Water Supply Dist. No. 8 of Clay County*, 153 S.W.3d 320, 326 (Mo. Ct. App. 2005). Only after first determining that one of § 1926's prongs is inapplicable may the court consider the inconsistent state law. *Id.*; *see also Village of Grafton*, 419 F.3d at 567 (a village's exclusive right under the Ohio Constitution to provide utility services within its boundaries was held to be "limited" by § 1926(b)); *Moore Bayou Water Ass'n, Inc. v. Town of Jonestown, Miss.*, 628 F.Supp. 1367, 1370 (N.D. Miss. 1986) (Section 1926(b) barred an annexing municipality from condemning a water association's water service rights and facilities while the association remained indebted to the FmHA).

The state statute at issue here, Tenn. Code Ann. § 6-51-111, is clearly inconsistent with Congress's purposes and objectives as set forth in § 1926(b). Therefore, if § 1926(b) applies to protect DSCUD from municipal encroachment, the federal statute preempts Tenn. Code Ann. § 6-51-111 so that the City could not simply take over the provision of water service when it annexed the area.

Taking the strongest legitimate view of the evidence in favor of DSCUD, and allowing all reasonable inferences in its favor, we find that genuine and material factual issues exist about whether DSCUD had adequate facilities within or adjacent to the area to provide service within a reasonable time after a request for service is made. On remand, DSCUD's § 1926(b) defense must first be addressed. Then, only if the trial court determines that DSCUD had not made service available to the parcel does Tenn. Code Ann. § 6-51-111 apply to allow the City to choose to provide water service to the entire subdivision.

### D. DSCUD's request for a declaratory judgment regarding its boundaries

In DSCUD's original complaint, it alleged that there were other properties adjacent to the proposed subdivision at issue that were also subject to future development and to which there was a dispute as to who had the right to provide water service. DSCUD stated that there was a need for resolution of the controversy regarding the location of its boundaries as it related to its right to supply water to the areas. The complaint did not include any specific factual details about these other properties and the alleged disputes. It appears that DSCUD was requesting the court to declare its right to provide water service to any property within its boundaries. Relevant to this request for relief, the trial court only held that DSCUD had no right to serve the portion of the subdivision that lay beyond DSCUD's boundaries.

-12-

A trial court's discretion in refusing a declaration is "very wide," and will not be disturbed on appeal unless the trial judge has acted arbitrarily. *State ex rel. Earhart v. City of Bristol*, 970 S.W.2d 948, 954 (Tenn. 1998) (citing *Standard Accident Ins. Co. v. Carvin*, 217 Tenn. 662, 400 S.W.2d 235, 236 (1966); *S. Fire and Cas. Co. v. Cooper*, 200 Tenn. 283, 292 S.W.2d 177, 178 (Tenn. 1956)). As we have previously discussed, a rural water association cannot claim the protection of § 1926(b) in order to prevent a city from serving any property within the association's boundaries. *See* **Lexington-S. Elkhorn**, 93 F.3d at 233. The issue of whether § 1926(b) protects DSCUD's right to serve other areas will depend upon specific facts that have not yet been presented, such as the proximity of DSCUD's existing water lines to the parcels at issue, and DSCUD's capability of serving the property within a reasonable time. *See, e.g.*, **Rural Water Dist. No. 1, Ellsworth County, Kansas v. City of Wilson, Kansas**, 243 F.3d 1263, 1271 (10th Cir. (Kan.) 2001) (trial court did not err in refusing to issue declaratory judgment regarding § 1926(b) protection of surrounding areas without evidence that development was planned or that district had capacity to serve potential users). We find that the trial court did not abuse its discretion in refusing to declare DSCUD's right to serve other disputed properties within its boundaries.

## V. CONCLUSION

For the aforementioned reasons, we reverse the order of the chancery court granting summary judgment to the City and remand for further proceedings. We affirm the trial court's decision not to issue a declaratory judgment concerning the surrounding properties. Costs of this appeal are taxed to Appellee, the City of Dyersburg, for which execution may issue if necessary.

_____

ALAN E. HIGHERS, JUDGE