**LEXINGTON-SOUTH ELKHORN WATER DISTRICT, Plaintiff–Appellant, Defendant-Appellant,**

v.

**CITY OF WILMORE, KENTUCKY, Defendant–Appellee, Plaintiff-Appellee.**

No. 95–5497.

United States Court of Appeals, Sixth Circuit.

Argued May 9, 1996.

Decided Aug. 16, 1996.

William C. Rambicure, David R. Irvin (argued and briefed), Newberry, Hargrove & Rambicure, Lexington, KY, for Plaintiff–Appellant.

Robert L. Gullette, Jr. (argued), Gullette & Gullette, Nicholasville, KY, John N. Hughes (briefed), Frankfort, KY, for Defendant–Appellee.

Before: MARTIN, JONES, and NELSON, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

This is the appeal of a grant of summary judgment against the Lexington–South Elkhorn Water District in a declaratory action brought pursuant to 7 U.S.C. § 1926(b) seeking protection of the Water District's service area against encroachment by the City of Wilmore, Kentucky.

Lexington-South Elkhorn is a rural water association organized and existing pursuant to Kentucky law. Ky.Rev.Stat. Ann. §§ 65.810, 74.010 and 74.012. The Water District provides rural water service to a portion of the general public in Jessamine County, Kentucky, and is regulated by the Kentucky Public Service Commission. The Water District is financed, in part, by Farmers Home Administration loans made pursu-ant to the Consolidated Farm and Rural Development Act, 7 U.S.C. §§ 1921, et seq.

The City of Wilmore, Kentucky is an incorporated municipality which owns and operates its own water treatment and distribution plant and water distribution system. The City provides water to businesses and residences in and around its incorporated and annexed boundaries. Wilmore is authorized to provide water service pursuant to Ky.Rev. Stat. Ann. §§ 96.010, et seq., and is not regulated by the Kentucky Public Service Commission. The City also has a series of loans with the Farmers Home Administration.

On February 17, 1994, Lexington–South Elkhorn filed a federal complaint seeking declaratory and injunctive relief against Wilmore. Lexington–South Elkhorn alleged that the City had extended water distribution facilities over a portion of the Water District's territory in violation of 7 U.S.C. § 1926(b), and had begun providing and offering to provide water service to customers located within the Water District's boundaries. In some cases, Lexington–South Elkhorn alleged, the City had annexed the areas in which it had begun providing water service, and in other cases, it had simply begun providing water service to customers outside of the City limits and within the boundaries of the Water District. The City never disputed that it had extended its water lines and facilities into part of the Water District's territorial area, or that it had begun providing and offering to provide water service to some customers located within that area. The City claimed, however, that it was entitled to do so, and, on October 17, 1994, filed a state court action asserting that the Water District's boundaries were null and void. The City's state action was removed to the federal court and was consolidated with the Water District's action.

Prior to trial, both parties moved for summary judgment. On March 7, 1995, the district court granted the City's motion on the following grounds: (1) the City was an "association" within the meaning of the Act, it had obtained its own Farmers Home Administration financing, and was entitled to provide service to customers in the disputed areas

because it was actually doing so; (2) the statutory protections afforded to Lexington–South Elkhorn by Section 1926(b) extended no further than the immediate geographical area in which the Water District actually had service facilities in existence; (3) because a copy of the order of the Jessamine County Judge/Executive establishing the territorial boundaries of the Water District was not of record in the Jessamine County Clerk's Office, the Water District failed to establish that it had a territorial area subject to protection by Section 1926(b); and (4) the doctrines of laches and estoppel precluded the Water District from asserting any rights it may otherwise have had.

The Water District subsequently filed this timely appeal, raising five claims of error by the district court. For the reasons set forth below, we **AFFIRM.**

## I.

On appeal, the Water District contends that: (1) Section 1926(b) provides no statutory protection to municipalities, and only protects rural water associations against encroachment by municipalities; (2) application of a "pipe in the ground" test is contrary to law and to the purpose of Section 1926(b) where a rural water association has a defined territorial boundary; (3) its territorial boundaries were established properly; (4) the district court erred in applying the doctrines of laches and estoppel; and (5) it was incumbent upon the district court to adjudicate the entire controversy before it, and, in particular, to define the area in which the Water District's right to serve is statutorily protected from encroachment.

This court reviews a district court's grant of summary judgment *de novo. Wayne v. Village of Sebring,* 36 F.3d 517, 530 (6th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2000, 131 L.Ed.2d 1001 (1995) (cita-

tions omitted). The standard to be applied in deciding whether summary judgment is appropriate is whether a genuine issue of material fact exists, or whether one party is entitled to judgment as a matter of law. *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir.1989). For a grant of summary judgment to be proper, the moving party must show that there is an absence of evidence to support the non-moving party's case and a determination that the evidence is so one-sided that one party must prevail as a matter of law. *Id.*

We first review the district court's holding that Lexington–South Elkhorn does not qualify for Section 1926(b) protection. The Consolidated Farm and Rural Development Act grants the Secretary of Agriculture the authority to "extend loans to certain associations providing water service or management, soil conservation practices, or other essential community services to rural residents." *Jennings Water, Inc. v. City of North Vernon,* 895 F.2d 311, 314–15 (7th Cir.1989); 7 U.S.C. § 1926(a)(1).[1] In order to encourage rural water development by expanding the number of potential users and to safeguard the financial viability of rural associations and Farmers Home Administration loans, 7 U.S.C. § 1926(b) was enacted. *See City of Madison v. Bear Creek Water Assoc.,* 816 F.2d 1057, 1060 (5th Cir.1987) (citing S.Rep. No. 566, 87th Cong., 1st Sess., *reprinted in* 1961 U.S.Code Cong. & Admin. News 2243, 2309). Section 1926(b) provides:

> The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such

1. Title 7 U.S.C. § 1926(a)(1) authorizes the Secretary of Agriculture to "make or insure loans to associations, including corporations not operated for profit, Indian tribes on Federal and State reservations and other federally recognized Indian tribes, and public and quasi-public agencies to provide for the application or establishment of soil conservation practices, shifts in land use, the conservation, development, use, and control of

water, and the installation or improvement of drainage or waste disposal facilities, recreational developments, and essential community facilities including necessary related equipment, all primarily serving farmers, ranchers, farm tenants, farm laborers, rural businesses, and other rural residents, and to furnish financial assistance or other aid in planning projects for such purposes."

event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

■ In their cross-motions for summary judgment, both Lexington–South Elkhorn and Wilmore claimed that they were entitled to summary judgment based on Section 1926(b). Before a party can prevail on such a claim, however, it must show that it is entitled to Section 1926(b) protection by establishing that: (1) it is an "association" within the meaning of the Act; (2) it has a qualifying outstanding Farmers Home Administration loan obligation; and (3) it has provided or made service available in the disputed area. The district court held that both the Water District and the City were "associations" for purposes of the Act, and that both parties have qualifying loans. The court held, however, that, unlike the City, Lexington–South Elkhorn had not provided service or made service available in the disputed areas, and thus was not entitled to Section 1926(b) protection.

■ The district court properly held that both parties were "associations" for purposes of Section 1926(b). Title 7 U.S.C. § 1926(a)(1) indicates that the term "associations" includes "corporations not operated for profit, Indian tribes on Federal and State reservations and other federally recognized Indian tribes, and public and quasi-public agencies...." In addition, Title 7 U.S.C. § 1926(a)(13), which authorizes the Secretary to make loans for community waste disposal and water facilities, states that, in certain circumstances, highest priority shall be given to the "application of any municipality or other public agency," indicating that a municipality is considered to be a public agency. Finally, applicable regulations define an "applicant" for Farmers Home Administration assistance to include "[a] public body, such as a municipality...." 7 C.F.R. § 1942.17(b)(1). Given the fact that Congressional intent appears to have been that municipalities should be viewed as "associations" for purposes of the Consolidated Farm and Rural Development Act, we agree with the district court that the City qualifies as an "association" because it is a public agency. We also agree with the district court that, as a body politic created for the purpose of providing a public water supply to a designated geographic area, the Water District is an "association" under the Act.

■ Because the district court properly held that both parties qualify as "associations," and because neither party challenges the district court's finding that both parties have qualifying Farmers Home Administration loans, the central issue in determining whether Lexington–South Elkhorn is entitled to Section 1926(b) protection is whether it has provided service or has made service available within the disputed territories. The district court relied on *North Shelby Water Co. v. Shelbyville Municipal Water & Sewer Commission*, 803 F.Supp. 15 (E.D.Ky. 1992), in construing the term "made available." In doing so, the district court rejected the Water District's argument that having a precisely-drawn service area suffices to fulfill the third requirement for statutory protection, and concluded that an association makes service available prior to the time a municipality begins providing service to a disputed area when it actually has water lines adjacent to or within the area at issue before municipal service begins. The district court found that Lexington–South Elkhorn had not provided or made service available under this test, and therefore did not satisfy the three prerequisites for Section 1926(b) protection. The evidence established, however, that the City had satisfied this test.

On appeal, Lexington–South Elkhorn contends that Wilmore is not entitled to Section 1926(b) protection because the statute prohibits encroachment by "any" municipal corporation and allows of no exceptions. With regard to its own entitlement to Section 1926(b) protection, Lexington–South Elkhorn claims that it has the exclusive right, pursuant to Section 1926(b), to provide service in the disputed areas. In response, the City claims that there is no evidence that its annexation of certain territory prohibits, curtails, or limits the activities or the service of the Water District because the Water District has no customers in those areas, and no facilities within or adjacent to the areas. In

short, the City contends that it is merely providing a service that was otherwise unavailable from the Water District.

■ Section 1926(b) has been construed as "unambiguously prohibit[ing] any curtailment or limitation of an FmHA-indebted water association's services resulting from municipal annexation or inclusion." *Bear Creek Water Assoc., Inc.*, 816 F.2d at 1059. The statutory language "indicates a congressional mandate that local governments not encroach upon the services provided by such associations, be that encroachment in the form of competing franchises, new or additional permit requirements, or similar means." *Id.* Moreover, the provision "should be given a liberal interpretation that protects rural water associations indebted to the FmHA from municipal encroachment." *Village of Sebring*, 36 F.3d at 527 (quoting *Jennings Water, Inc.*, 895 F.2d at 315). To qualify for Section 1926(b) protection, however, an "association" must meet the "statute's threshold requirements, having a continuing indebtedness under section 1926 and having 'made service available' to the area, by virtue of its line adjacent to the property and its responsibilities to applicants within its territory." *Glenpool Utility Services Authority v. Creek Co. Rural Water Dist. No. 2*, 861 F.2d 1211, 1214 (10th Cir.1988), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989).

The parties agree that Lexington–South Elkhorn has not actually provided water service in the disputed areas.[2] Lexington–South Elkhorn argues, however, that it has made service available within the meaning of Section 1926(b) and is entitled to the protection afforded by the statute. Although federal regulations require an association "[t]o provide adequate service to all persons within the service area who can feasibly and legally be served," 7 C.F.R. § 1942.17(n)(2)(vii), neither the statute nor

the regulations specifically defines the terms "provided" or "made available," so we look to the law governing the way in which a water district must provide service to potential customers to determine whether Lexington–South Elkhorn has provided or made service available in the disputed areas.

Kentucky law requires a water district to obtain a Certificate of Convenience and Necessity from the Kentucky Public Service Commission to construct and operate a water distribution system in a particular area. Ky. Rev.Stat. Ann. § 278.020(1) (stating that "[n]o person, partnership, public or private corporation, or combination thereof shall begin the construction of any plant, equipment, property or facility for furnishing to the public any of the services enumerated in KRS 278.010 ... until such person has obtained from the Public Service Commission a certificate that public convenience and necessity require such construction"). Once a water district is authorized to provide service, it is required to make reasonable extensions of its water lines to serve customers who apply for service. Ky.Rev.Stat. Ann. § 278.280(3). When a service line is installed, a water district is required to provide the first fifty feet of the extension to connect a customer to a distribution line. 807 KAR 5:066(11) (stating also that a utility may be required to construct extensions greater than fifty feet if an extension under fifty feet is unreasonable under the circumstances). Thus, a key factor in determining whether a water district has made water service available is the proximity of the water district's distribution lines to areas in dispute.

Lexington-South Elkhorn admits that it has not obtained a Certificate of Public Convenience and Necessity from the Kentucky Public Service Commission to construct facilities or to serve customers within portions of

2. Of the two areas at issue, the unannexed area and the area annexed by the City in 1988, the Water District has no facilities in the annexed area. In the unannexed area, the Water District has no facilities on or adjacent to the disputed properties, with one exception. According to Lexington–South Elkhorn's Response to the City's Interrogatories, of the ten areas in dispute, only one has a water main on the property at issue. The City asserts that that water main was installed some time after the City had begun providing water service to the area, and the Water District does not dispute that contention. With regard to the other nine areas, the Water District has one water main approximately fifty yards from a disputed property, while the Lexington–South Elkhorn facilities nearest to the other properties range from .1 to .4 miles away. Response to City of Wilmore's Interrogatories, J.A. at 69.

the disputed areas, and has had no requests for service from potential customers in the areas at issue. In our view, these concessions distinguish this case from other cases in which courts have upheld water districts' rights to Section 1926(b) protection from municipal encroachment based on the fact that the water districts were actually and actively providing service, or clearly had made service available.

In *Jennings Water, Inc.*, a rural, non-profit water association filed suit pursuant to Section 1926(b) to prevent a municipality from finishing a water pipeline and commencing water service to a private, nonprofit utility company (CSL Utilities, Inc. and CSL Community Association, Inc.). CSL originally purchased its water from the Geneva Township Water Corporation (a local rural water company), but when Geneva and another local rural water company merged into Jennings, CSL began receiving all of its water from Jennings, and became Jennings' major wholesale purchaser.

The Fifth Circuit affirmed a district court's interpretation of Section 1926(b) as "absolutely prohibiting a municipality . . . from curtailing the area served by a rural water association indebted to the FmHA." *Jennings Water, Inc.*, 895 F.2d at 314. The court stated that Section 1926(b) "explicitly prohibits municipal encroachment on a rural water association's service area by means of annexation or grant of private franchise," and agreed with the district court that the statutory ban on "curtailment" encompasses "not only a municipality's use of annexation or condemnation powers but also its contracting to sell water to a customer served by the association." *Id.*

In affirming the district court's grant of summary judgment against Jennings, the Fifth Circuit indicated that the municipality would be barred from selling water to CSL if: (1) Jennings was a Farmers Home Administration-indebted rural water association, and (2) the City's proposed sale of water would limit or curtail the service provided or made available through Jennings. *Id.* at 318. Noting that the parties conceded the former element, the court addressed only the second, and stated: "A plain reading of section

1926(b), together with uncontroverted evidence establishing that CSL was 'served' by Jennings at the time of the 1977 FmHA loan (and for the following decade), therefore leads us to conclude that the district court did not err in granting summary judgment to Jennings." *Id.* Thus, a central aspect of the Fifth Circuit's holding was that Jennings was actually providing water service at the time the City set out to provide water to CSL. Unlike the case before us, a water association's existing service was being encroached upon by a municipality.

In *Glenpool Utility Services Authority,* the Tenth Circuit addressed the issue of whether a municipality had the exclusive right to provide water service to an annexed territory, or whether a rural water district had the exclusive right to supply that area with water service. In 1964, Creek County Rural Water District No. 2 was incorporated to provide water service within specific territorial limits, and obtained a Farmers Home Administration loan to construct its rural water system. In 1967, District No. 2 annexed additional territory within Creek and Tulsa Counties, including an area known as Eden South. The Glenpool Utility Services Authority was a municipal utility service established in part to provide water service to areas inside and outside the corporate limits of the City of Glenpool. In 1983, the City annexed new territory into its City limits, including the area of Eden South. Glenpool was aware at the time of annexation that District No. 2 claimed the exclusive right to serve the Eden South area. At the time the claim was brought, Glenpool was providing water service to Eden South.

The district court found that District No. 2 had a water line that ran within fifty feet of the Eden South property and that any prospective user within the Water District's territory could receive water service from the Water District simply by applying for service. Because the Water District would then be obligated to provide the service, the district court found that it "could and would provide water service to Eden South within a reasonable time of an application for such service." *Glenpool Utility Services Authority,* 861 F.2d at 1213. Nonetheless, the dis-

trict court held that neither District No. 2 nor Glenpool had an exclusive right to furnish water service to the Eden South property.

On appeal, the Tenth Circuit stated:

The district court correctly held that District No. 2 came within the purview of section 1926(b) and had met the statute's threshold requirements, having a continuing indebtedness under section 1926 and having "made [service] available" to the area, by virtue of its line adjacent to the property and its responsibilities to applicants within its territory. The statute prohibits Glenpool from using annexation of Eden South to curtail or limit the service made available by District No. 2. Glenpool may not legally use "inclusion" of Eden South "within the boundaries of any municipal corporation" as a springboard for providing water service to the area, and thereby limit the service made available by District No. 2.

*Id.* at 1214. The Tenth Circuit thus found that District No. 2 was entitled to Section 1926(b) protection because it actually had water lines in place within fifty feet of the disputed property.

The Fifth Circuit has also emphasized the importance of determining whether a water association has actually provided service or made it available in determining whether Section 1926(b) protection is warranted. In *Bear Creek Water Ass'n.*, 816 F.2d 1057 (5th Cir.1987), the court was faced with the issue of whether a municipality properly instituted eminent domain proceedings to condemn the facilities of a water association indebted to the Farmers Home Administration. The Bear Creek Water Association was organized in the early 1970s to seek a Certificate of Public Convenience and Necessity from the Mississippi Public Utility Commission to operate a rural water utility within one mile of Madison's City limits. The City agreed to relinquish its rights in the area, Bear Creek received a Certificate of Public Convenience, and in 1971, financed by five Farmers Home Administration loans, the Water District installed and began operating a water system in the certificated area. By 1985, the City had grown and its boundaries included part

of the area served by the Water District. The City instituted eminent domain proceedings to condemn Bear Creek's facilities located within the City limits as well as the Water District's certificate to operate in that area. The area included approximately 40% of Bear Creek's customers and 60% of its facilities, including its water plant, wells, and feeder mains. Stating that Section 1926(b) "unambiguously prohibits any curtailment or limitation of an FmHA-indebted water association's services resulting from municipal annexation or inclusion," the court read Section 1926(b) strictly as proscribing any "interference by competing facilities with the rural water authority 'during the term of said loan.' " *Id.* at 1059.

■ These cases teach that whether an association has made service available is determined based on the existence of facilities on, or in the proximity of, the location to be served. If an association does not already have service in existence, water lines must either be within or adjacent to the property claimed to be protected by Section 1926(b) prior to the time an allegedly encroaching association begins providing service in order to be eligible for Section 1926(b) protection. Based on the location of Lexington–South Elkhorn's distribution lines, it had not made service available prior to the time that Wilmore began providing service to the disputed properties. Thus, although the Water District qualifies as an "association" and has an outstanding qualifying loan, it is unable to show that it has provided service or made service available in the disputed areas, and is therefore not entitled to the Section 1926(b) protection that might otherwise have been available.

■ Because Lexington–South Elkhorn failed to satisfy the third criterion for statutory protection, Wilmore was entitled to provide service to residents both within and outside of its annexed area. Ky.Rev.Stat. Ann. § 96.150(1) states:

Any city that owns or operates a water supply or sanitary sewer system may extend the system into, and furnish and sell water and provide sanitary sewers to any person within, any territory contiguous to

the city, and may install within that territory necessary apparatus; provided, however, that the extension of a water supply or sanitary sewer system shall not enter into any territory served by an existing water supply or sanitary sewer district unless such district requests the extension of water or sewer services from a city. Lexington-South Elkhorn claims that the district court erred in reading Section 96.150 as encouraging the City to extend its water facilities into areas without water service. The Water District argues that the district court ignored the provision in the same statute stating that "the extension of a water supply ... shall not enter into any territory served by an existing water supply ... unless such district requests the extension of water or sewer services from a city." Lexington–South Elkhorn cannot prevail on this argument, however, because it is not currently serving the disputed areas, and has not received approval from the Kentucky Public Service Commission to extend service to those areas. The City was therefore justified in extending its service into the disputed territories, and was not required to obtain the Water District's permission to do so pursuant to Section 96.150(1).

In sum, an association's ability to serve is predicated on the existence of facilities within or adjacent to a disputed property. By its clear terms, Section 1926(b) does not provide an automatic, exclusive right to serve, but rather provides protection only if certain conditions are met. Among those conditions are that an association has at least made service available. In this case, Lexington–South Elkhorn has not established its authorization to serve the disputed properties or its ability to provide the service. Not having facilities available, and not having requested authority from the Public Service Commission to construct facilities, Lexington–South Elkhorn's availability of service is merely speculative.

## II.

Because Lexington–South Elkhorn currently is ineligible for the protection afforded by Section 1926(b) and because the City of Wilmore properly began providing water service to the disputed areas, it is unnecessary for us to decide whether the absence of a properly-filed order defeats the valid establishment of the Lexington–South Elkhorn's boundaries; whether Lexington–South Elkhorn is precluded from asserting any rights it may have had based on the City's defenses of laches and estoppel; or whether the district court erred in failing to define the specific area in which Lexington–South Elkhorn is entitled to provide service free from encroachment by the City of Wilmore.

The judgment of the district court is thus **AFFIRMED**.