RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0365P (6th Cir.)
File Name: 03a0365p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

───────────────

LE-AX WATER DISTRICT,
　　　*Plaintiff-Appellee,*

　　*v.*　　　　No. 02-3016

CITY OF ATHENS, OHIO,
　　　*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 00-01328—Algenon L. Marbley, District Judge.

Argued: June 12, 2003

Decided and Filed: October 10, 2003

Before: KEITH, MOORE, and GIBBONS, Circuit Judges.

───────────────

**COUNSEL**

**ARGUED:** Garry E. Hunter, LAW DIRECTOR, Athens, Ohio, for Appellant. Orla E. Collier III, BENESCH, FRIEDLANDER, COPLAN & ARONOFF, Columbus, Ohio, for Appellee. **ON BRIEF:** Garry E. Hunter, LAW DIRECTOR, Athens, Ohio, for Appellant. Orla E. Collier III, BENESCH, FRIEDLANDER, COPLAN & ARONOFF, Columbus, Ohio, for Appellee. Barry M. Byron, Willoughby,

Ohio, Dennis M. O'Toole, Stephen P. Bond, BAUMGARTNER & O'TOOLE, Elyria, Ohio, for Amici Curiae.

MOORE, J., delivered the opinion of the court, in which KEITH, J., joined. GIBBONS, J. (pp. 17-20), delivered a separate dissenting opinion.

───────────────

**OPINION**

───────────────

KAREN NELSON MOORE, Circuit Judge. The defendant City of Athens, Ohio ("Athens") appeals the district court's grant of summary judgment and of a declaratory judgment to the plaintiff Le-Ax Water District ("Le-Ax"), as well as the district court's denial of Athens's own motion for summary judgment. University Estates owns 825 acres of property outside of, but nearby, both Athens and Le-Ax. Both Athens and Le-Ax wish to supply water to University Estates, which seeks to develop its property into a golf-course community. After University Estates made arrangements for Athens to supply the necessary water, Le-Ax, a predominantly rural water district, brought this lawsuit, claiming that Athens's agreement to provide water service to University Estates violated Le-Ax's rights under 7 U.S.C. § 1926(b). For the reasons that follow, we **REVERSE** the district court's grant of summary judgment and of a declaratory judgment to Le-Ax, and we also **REVERSE** the district court's denial of summary judgment to Athens. We **REMAND** this case to the district court so that it may enter judgment in favor of Athens and dismiss the case.

# I. OVERVIEW

## A. Factual History

The Le-Ax Water District is a rural water district that was created by a judicial order upon a petition filed in the Athens County Court of Common Pleas in 1980, pursuant to OHIO REV. CODE ANN. § 6119.01. Joint Appendix ("J.A.") at 71-72. As a water district, Le-Ax is an independent political subdivision of the State of Ohio, governed by OHIO REV. CODE ANN. § 6119. Le-Ax's territory was described in the petition approved by that court.

Le-Ax, as a rural water district, assumed the debt that its predecessor owed to the United States Department of Agriculture ("USDA"). As a result, Le-Ax has been indebted to the USDA since its inception. Le-Ax subsequently incurred another debt to the USDA when it sold revenue bonds to the Rural Economic and Community Development Service ("RECDS"), which was formerly known as the Farmers Home Administration ("FmHA"). Bonds were issued on February 26, 1997, in the principal amount of $6,844,000 (at 4.5% interest), that will expire on February 1, 2037. J.A. at 309. The loans were not made in order to help Le-Ax finance the University Estates project and apparently have no connection in any way to the University Estates transaction.

University Estates owns 825 acres of property, all of which is outside the boundaries of both Le-Ax and Athens. University Estates plans to develop this property into a golf course and approximately 800 homes. The property is close to the boundaries of both Le-Ax and Athens; it borders Athens on Athens's northern side, and is, at its closest point, 1400 feet (roughly one third of a mile) from Le-Ax's boundary. J.A. at 230 (Aff. of Steven Mullaney). Le-Ax has taken no formal steps to change its boundaries to include University Estates's property, such as by filing a petition in

state court under OHIO REV. CODE ANN. § 6119.051. In contrast, Athens has begun the process of changing its boundaries to include University Estates. On October 16, 2000, Athens's City Council authorized a development agreement with University Estates, pursuant to which Athens would annex University Estates and provide it with water. J.A. at 117-22 (Ordinance and Development Agreement).

Standing in Athens's way, however, is this lawsuit — for Le-Ax also wishes to supply University Estates with water and claims that 7 U.S.C. § 1926(b) vests Le-Ax with the right to serve University Estates. Although Le-Ax does not currently supply University Estates with water (the property as of yet has no access to water from any supplier) and does not currently have lines extending into University Estates's territory, Le-Ax claims that it could supply University Estates with water almost immediately. Le-Ax refers to an eight-inch water main that it owns, which is immediately adjacent to the University Estates site. Supplemented by two nearby storage tanks, the eight-inch transmission line, Le-Ax claims, can provide water to University Estates at a rate far exceeding the estimates of University Estates's expected usage. A pressure-reducing valve, a tap in, and a pumping station will be necessary to connect the eight-inch main to University Estates. However, there was unrebutted testimony that the valve is an apparently minor and inexpensive addition and the tap-ins and the pumping station (as part of the water apparatus internal to the site) are to be provided by the developer of the property, not the water supplier. J.A. at 553 (Dep. Test. of John Collins).

## B. Procedural History

On November 16, 2000, Le-Ax filed this lawsuit in the United States District Court for the Southern District of Ohio, alleging that the proposed water supply arrangement between Athens and University Estates would violate 7 U.S.C. § 1926(b). Upon cross-motions for summary judgment and

an in-court hearing, the district court granted summary judgment to Le-Ax and issued a declaratory judgment that the provision of water from Athens to University Estates would violate 7 U.S.C. § 1926(b). This timely appeal followed.

## II. ANALYSIS

### A. Standards of Review

This court reviews a grant of summary judgment de novo. *Bukowski v. City of Akron*, 326 F.3d 702, 707 (6th Cir. 2003). Although the district court's denial of a motion for summary judgment is usually treated as a nonappealable interlocutory order, when "an appeal from a denial of summary judgment is presented in tandem with a grant of summary judgment, this court has jurisdiction to review the propriety of the district court's denial of summary judgment." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 235 (6th Cir. 2003) (quotation omitted). The district court's denial of summary judgment based on purely legal grounds is reviewed de novo. *Id.* at 235-36. Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

### B. Background to 7 U.S.C. § 1926(b)

Over forty years ago, Congress passed the Agricultural Act of 1961, Pub. L. No. 87-128, 75 Stat. 294, which sought to preserve and protect rural farm life in a number of respects. Title III of the Act (which is known as the Consolidated Farm and Rural Development Act) was concerned largely with issues of agricultural credit. Title III contained two sections that are at issue here, sections 306(a) and 306(b). Section 306(a) of the Act, now codified at 7 U.S.C. § 1926(a), made federal loans available to water service associations. Section

306(b), now codified at 7 U.S.C. § 1926(b), protected the recipients of such loans from competition, to a certain extent. The text of section 306(b) reads:

> The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

7 U.S.C. § 1926(b). This provision prevents local governments from expanding into a rural water association's area and stealing its customers; the legislative history states that the statutory provision was intended to protect "the territory served by such an association facility against [other] competitive facilities" such as local governments, as otherwise rural water service might be threatened by "the expansion of the boundaries of municipal and other public bodies into an area served by the rural system." S. Rep. No. 87-566, at 67 (1962), *reprinted in* 1961 U.S.C.C.A.N. 2243, 2309.

The concept of economies of scale is an integral part of § 306(b)'s rationale; by protecting a rural water association's customer base, the provision allows such associations to spread their fixed costs over a large group of users. In so doing, the statute aims to prevent rural water costs from becoming prohibitively expensive to any particular user, to develop a system providing fresh and clean water to rural households, and to protect the federal government as insurer of the loan. *Id.* ("By including service to other rural residents, the cost per user is reduced and the loans are more secure in

addition to the community benefits of a safe and adequate supply of running household water."); *see also Lexington–S. Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir. 1996) (stating that the Act "safeguard[s] the financial viability of rural associations and Farmers Home Administration loans" and "encourage[s] rural water development by expanding the number of potential users"). We have stated that this "provision 'should be given a liberal interpretation that protects rural water associations indebted to the FmHA from municipal encroachment.'" *Lexington–S. Elkhorn*, 93 F.3d at 235 (citation omitted).

In order to state a claim under § 1926(b), a plaintiff must establish "that 1) it is an 'association' within the meaning of the Act; 2) it has a qualifying outstanding FmHA loan obligation; and 3) it has provided or made service available in the disputed area." *Adams County Reg'l Water Dist. v. Vill. of Manchester*, 226 F.3d 513, 517 (6th Cir. 2000). The first two elements are not in dispute here; the parties agree that Le-Ax is an "association" within the meaning of the Act and that Le-Ax has a qualifying outstanding FmHA loan obligation. The only element in controversy here is whether Le-Ax satisfies the third element of the test.

## C.  The "Has Provided or Made Service Available" Requirement

The key question is whether Le-Ax satisfies the requirement that the association "has provided or made service available in the disputed area." *Id.* at 517. Unfortunately, the statute and the legislative history provide no help in explaining this phrase, which is derived from the statute itself. *See* Scott Hounsel, Note: *Water Associations and Federal Protection Under 7 U.S.C. § 1926(b): A Proposal to Repeal Monopoly Status*, 80 TEX. L. REV. 155, 159 (2001) (noting that the statute does not define "provided or made available"). Without any guidance from Congress or the Supreme Court, federal appellate courts have interpreted

this language in a variety of ways. Different circuits use different factors to determine whether a water association can invoke the protections of § 1926, including whether the water association has the physical ability to serve the area in question, and whether it has a legal duty or legal right to do so.

To determine whether service was made available, many courts begin with a "pipes in the ground" or "physical ability" approach that examines whether the water association has the physical means presently to serve the area. This inquiry asks whether the association can demonstrate "'that it has adequate facilities within or adjacent to the area to provide service to the area within a reasonable time after a request for service is made.'" *Sequoyah County Rural Water Dist. No. 7 v. Town of Muldrow*, 191 F.3d 1192, 1203 (10th Cir. 1999) (citation omitted). The Tenth Circuit has adopted this approach but has also required that the water association have the right under state law to serve the area in question. *Id.* at 1202 n.8. The Eighth Circuit applies this same test, requiring that a water association show both that it has the physical means to serve the area and that it has a legal right to do so. *Rural Water System #1 v. City of Sioux Center,* 202 F.3d 1035, 1037 (8th Cir.), *cert. denied*, 531 U.S. 820 (2000).

Neither of those circuits requires that a water association have a legal *duty* to serve in order to receive protection under § 1926. That is, however, the approach of the Fourth Circuit, which apparently requires *both* a state-law duty to serve and a physical ability to serve. *Bell Arthur Water Corp. v. Greenville Utils. Comm'n,* 173 F.3d 517, 525-26 (4th Cir. 1999).[1] The Fifth Circuit has adopted a far looser approach,

---

[1]The Fourth Circuit in *Bell Arthur* reports that we also have adopted this approach. *See Bell Arthur Water Corp. v. Greenville Utils. Comm'n,* 173 F.3d 517, 526 (4th Cir. 1999). As we explain below, however, the *Bell Arthur* court was apparently misreading our decision in *Lexington–S.*

apparently holding that service is made available through *either* a state-law duty to serve *or* a physical ability to serve. *N. Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 916 (5th Cir.), *cert. denied*, 519 U.S. 1029 (1996).

As the above analysis makes clear, the circuits are in conflict as to what they require. In *Lexington–S. Elkhorn*, we adopted the same two-part approach that the Eighth and Tenth Circuits have taken. The first requirement under *Lexington–S. Elkhorn* is the "pipes in the ground" requirement. In *Lexington–S. Elkhorn*, we plainly stated that "[i]f an association does not already have service in existence, *water lines must either be within or adjacent to the property* claimed to be protected by Section 1926(b) prior to the time an allegedly encroaching association begins providing service in order to be eligible for Section 1926(b) protection." *Lexington–S. Elkhorn*, 93 F.3d at 237 (emphasis added). The second requirement of *Lexington–S. Elkhorn* is that the water district must have the legal right under state law to serve the area in question. *Id.* at 235-36 (noting that "Lexington-South Elkhorn admits that it has not obtained . . . from the Kentucky Public Service Commission [the right] to construct facilities or to serve customers within portions of the disputed areas," which "distinguish[es] this case from other cases in which courts have upheld water districts' rights to Section 1926(b) protection"). Because neither of these requirements was met, we dismissed the water district's claim under § 1926(b). *Id.* at 238 (stating that because the plaintiff "has not established its authorization to serve the disputed properties or its ability to provide the service," it cannot be said to have "made service available").

In this case, Le-Ax has clearly satisfied both of these requirements. First, under state law, Le-Ax has a legal right

---

*Elkhorn.* We have only required (like the Tenth Circuit) a state-law *right* (not duty) to serve the area to invoke § 1926.

to serve the area. As even Athens seems to acknowledge, Ohio law permits water districts "[t]o supply water to users within *and without* the district." OHIO REV. CODE ANN. § 6119.01(A) (emphasis added). Under the plain text of this statute, which Athens has not even attempted to distinguish, Le-Ax has the right to provide service outside its boundaries. Second, Le-Ax has the physical ability to serve University Estates within the meaning of our "pipes in the ground" test. It is undisputed that Le-Ax has water lines "within or adjacent to" the relevant property that could meet University Estates's needs. Le-Ax currently has an eight-inch line immediately adjacent to University Estates, and also has water storage tanks that augment the system. Athens's only argument is that some additional work would have to be done before Le-Ax could supply University Estates with water. Athens points out that Le-Ax's own expert testified that Le-Ax would need a pressure-reducing valve, some tap-ins, and a pumping station in order to supply University Estates with water. The pressure-reducing valve is apparently a minimal addition that costs roughly $2,000, and the tap-ins and pumping station would be provided by University Estates, regardless of whether Athens or Le-Ax supplied the water. To argue, as Athens does, that water service must be available immediately (evidently in the sense that someone at University Estates must be able to go over to the faucet and turn on the water), would be to ignore our statement in *Lexington–S. Elkhorn* that the "made available" requirement is satisfied not only when the pipes are "within," but also when they are merely "adjacent to" the property. The evidence here admits of only one conclusion, that Le-Ax "has adequate facilities within or adjacent to the area to provide service to the area within a reasonable time after a request for service is made." *Sequoyah County*, 191 F.3d at 1203 (quotation omitted); *cf. Bell Arthur*, 173 F.3d at 526 (holding that service was not made available when the water district only had a six-inch pipeline running near the disputed area and a fourteen-inch pipeline was necessary to serve the area); *Glenpool Util. Servs. Auth. v. Creek Cty. Rural Water Dist.*, 861 F.2d 1211,

1213 (10th Cir. 1988) (holding that service was made available when the water district had a water line that ran within fifty feet of the property), *cert. denied*, 490 U.S. 1067 (1989).

**D. Offensive and Defensive Uses of Section 1926**

Having established the physical ability to serve University Estates and a legal right to do so under state law, Le-Ax argues that it is therefore entitled to summary judgment. We, however, believe that Le-Ax cannot properly invoke the protections of 7 U.S.C. § 1926(b). Central to our conclusion is the fact that Le-Ax is not seeking to use the statute to protect its users or territory from municipal incursion in this case. It instead is seeking to use the statute to foist an incursion of its own on users outside of its boundary that it has never served or made agreements to serve. To grant Le-Ax what is essentially monopoly status over property that it has never served (or contracted to serve), and that is outside of its boundary, we believe, would be wholly inconsistent with the statute's text and legislative history, as well as our case law. Ultimately, we agree with Athens that § 1926(b) can be used only as a shield to defend against invasion rather than as a sword to wage one.

This case presents unique facts. Le-Ax has brought this lawsuit under 7 U.S.C. § 1926(b), claiming that Athens has improperly curtailed or limited Le-Ax's activities by contracting to provide University Estates with water. Athens, however, is not attempting to serve users within Le-Ax's boundary. Nor is Athens attempting to steal Le-Ax's customers that may be outside of Le-Ax's boundary. Instead, Athens is merely seeking to persuade unserved users to sign up with Athens (rather than Le-Ax) for water service. Believing Athens's action to be outside of the statute's intended prohibition, we hold today that a claim under § 1926(b) has not been established under these circumstances. When a rural water district's boundaries are geographically

determined by the state, we hold that a rural water district cannot use § 1926(b) as a sword to force new customers who are outside that geographic area to receive water service through the rural water district.

We begin with the text and legislative history of 7 U.S.C. § 1926(b). The text of the statute states that "[t]he service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation." 7 U.S.C. § 1926(b). The statute's use of phrases like "curtailed" and "limited" to describe the municipality's interference with the rural water association suggests that a rural water association must already be providing service to an area before the protections of § 1926(b) apply. The statute's language provides no support for Le-Ax's claim that it has a right to curtail or limit Athens's own service to University Estates. *See* Hounsel, *supra*, 80 TEX. L. REV. at 159 (arguing that the statutory text suggests "that it is the existing customers of the association that are off-limits to competing municipalities").

The legislative history also makes it clear that the statute was only meant to protect rural water associations from the outside threat of local governments taking their customers — not as a weapon for water associations to use to recruit new users outside of their boundaries. The legislative history states that the section was "added to assist in protecting the territory served by such an association facility against competitive facilities, which might otherwise be developed with the expansion of the boundaries of municipal and other public bodies into an area served by the rural system." S. Rep. No. 87-566, at 67 (1962), reprinted in 1961 U.S.C.C.A.N. 2243, 2309. The legislative history casts the statute's purpose in a defensive light. It plainly suggests that the goal of the statute is only to protect territory already served by a rural water association from municipal expansion into the rural water association's area; it does not give

credence to Le-Ax's hypothesis that the statute can be used to recruit unwilling new users outside of the rural water association's boundary. *Cf.* Hounsel, 80 TEX. L. REV. at 159-60 ("[T]he claim that an indebted association could extend its federal protection beyond its actual or operative service area has no support in the legislative history.").

The distinction between "offensive" and "defensive" uses of the statute is also embedded, although somewhat implicitly, in our cases. Even our broad statements about § 1926(b)'s applicability have always involved an element of actual encroachment on a water association's existing area or users. *See Lexington–S. Elkhorn*, 93 F.3d at 235 (stating the section "'indicates a congressional mandate that local governments not *encroach* upon the services provided by such associations, be that encroachment in the form of competing franchises, new or additional permit requirements, or similar means'") (citation omitted) (emphasis added); *Adams County*, 226 F.3d at 519 (stating "'that the statute should not be construed narrowly to prohibit municipal *encroachment* only if technically by annexation or grant of franchise, but should be applied broadly to protect rural water associations indebted to FmHA from competition from expanding municipal systems'") (citation omitted) (emphasis changed). We, in fact, presumed the element of encroachment in our version of the "pipes in the ground" test, where we stated that "water lines must either be within or adjacent to the property claimed to be protected by Section 1926(b) prior to the time an *allegedly encroaching association* begins providing service in order to be eligible for Section 1926(b) protection." *Lexington–S. Elkhorn*, 93 F.3d at 237 (emphasis added). The repeated use of the term "encroachment" suggests that the statute is only invoked properly when the municipality is attempting to provide water service to a rural water association's users or within its boundary.

Our conception of § 1926(b) is also consistent with the results in cases both in this circuit and in other circuits. Virtually all of the cases involving § 1926(b) involve competitors who attempt to serve customers within the rural water district's state-law authorized boundaries, which is simply not the case here. *See Lexington–S. Elkhorn*, 93 F.3d at 232 (holding that although Lexington–S. Elkhorn was "offering to provide water service to customers located within the Water District's boundaries," it did not violate the statute because the water district was neither licensed to reach those customers nor had the facilities to do so); *Sequoyah County*, 191 F.3d at 1201 n.7, 1204 (holding that there was a genuine issue for trial on whether the water district could adequately supply the water to the disputed territories, but "assum[ing] that the disputed customers are within Plaintiff's territory as it is defined by state law"); *N. Alamo*, 90 F.3d at 913 (involving users and property that "lie within the Utility's Certificated Area"); *Rural Water Dist. No. 1, Ellsworth County v. City of Wilson*, 243 F.3d 1263, 1267 (10th Cir. 2001) (involving properties within the water district's state-law boundary).

Le-Ax argues that § 1926(b) should apply whenever a rural water association has the capability of serving users that could also be served by some other entity. This vision of § 1926(b) is expansive indeed. It would essentially give Le-Ax monopoly status not only within its boundaries and among its current users, but also would extend that status to wherever Le-Ax could provide service. When questioned by the panel at oral argument, Le-Ax did not dispute that, under its view of § 1926(b), it was entitled by federal law to the exclusive right to provide service to any unincorporated area that it could physically serve. Were we to uphold Le-Ax's claim in this case, we would be holding that this federal law, originally meant to protect water associations from undue intrusion, somehow gives them this sort of roving monopoly status. Without support in the statute's text, the legislative history, or

in relevant precedent, we are reluctant to take such a broad step.

Considering the statute's text and history as well as our own precedents, we must conclude that Le-Ax has not presented a claim under § 1926(b). We hold that when a rural water district's boundaries are geographically determined by the state, a rural water district cannot use § 1926(b) to obtain new customers outside that geographic area.

Because the distinction between offensive and defensive uses can be difficult to delineate, we take care to limit the scope of our holding. This is not a case where a defendant has intruded on a water association's actual or operative service area; the evidence is clear that University Estates was never a customer of Le-Ax, University Estates never arranged to have water provided by Le-Ax, and no part of University Estates was ever within Le-Ax's state-law service boundary. Moreover, no state law requires University Estates to be served only by Le-Ax or requires Le-Ax to serve University Estates. We also take care to point out that Le-Ax's boundaries are clearly defined by state law; we do not consider here a case where the state has not defined the boundaries of its water districts or associations.[2]

---

[2]A few states (including at least one in our own circuit) apparently do not create boundaries for their water districts. *See* Scott Hounsel, Note: *Water Associations and Federal Protection Under 7 U.S.C. § 1926(b): A Proposal to Repeal Monopoly Status*, 80 TEX. L. REV. 155, 163 (2001) (explaining that "[t]oday, the ability to determine the service area of any water supplier is further complicated by state statutes, which may or may not attach geographical boundaries when authorizing a utility to provide water under state regulations"). Kentucky, for example, evidently does not prescribe boundaries for its water districts; as a result, the boundaries of a water district or association cannot defined by state law but only by practice. *See N. Shelby Water Co. v. Shelbyville Mun. Water & Sewer Comm'n*, 803 F. Supp. 15, 21-22 (E.D. Ky. 1992) (noting that an administrative officer of the state had testified that "[t]here is no operative definition under Kentucky law of the phrase 'service area' to

We hasten to point out that we are not leaving Le-Ax in a difficult position. The current users and service area of Le-Ax are still sacrosanct under § 1926(b). Le-Ax still can attempt to persuade University Estates to become its customer using normal competitive means. Le-Ax also has the option of changing its boundaries pursuant to the procedures specified in OHIO REV. CODE ANN. § 6119.051, which allows a water district, in some circumstances, to seek to expand its boundaries by filing a petition in the court of common pleas. We simply hold that federal law does not compel University Estates to be served by Le-Ax. Finding this to be the inexorable conclusion of our analysis of the statute's text, history, and interpretative case precedent, we dismiss Le-Ax's claim.

## III.  CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's grant of summary judgment and of a declaratory judgment to the plaintiff, and **REVERSE** the district court's denial of summary judgment to the defendant. We **REMAND** this case to the district court so that it may enter judgment in favor of Athens and dismiss the case.

---

delineate North Shelby's territory" and not addressing the matter); *see also* Hounsel, *supra*, 80 TEX. L. REV. at 163 n.39 (contrasting Mississippi, which does prescribe geographical boundaries with Kentucky, which does not). Because Ohio in this case has prescribed the boundaries of the Le-Ax water district, we do not consider here the ramifications of an unbounded water district for purposes of § 1926(b).

---

**DISSENT**

---

JULIA SMITH GIBBONS, Circuit Judge, dissenting. I agree with the majority's well-reasoned analysis contained in sections II.A. through II.C. of its opinion. Based upon this analysis, I would affirm the district court's judgment. While the arguments contained in section II.D. of the majority's opinion may be sound policy, in my view, the result reached by the majority is inconsistent with the statute's language as interpreted by this court's binding precedent.

The majority is correct when it says in section II.D. that "§ 1926(b) can be used only as a shield to defend against invasion rather than as a sword to wage one." (Majority Op. at 11.) The majority errs, however, in defining the area that § 1926(b) protects from invasion.

As the majority correctly explains in section II.B. of its opinion, § 1926(b) protects the area where the association "has provided or made service available." (Majority Op. at 7, quoting *Adams County Reg'l Water Dist. v. Vill. of Manchester*, 226 F.3d 513, 517 (6th Cir. 2000).) It is relatively easy to determine the area where the association has provided service, but it is not obvious what the statute means by "service . . . made available." 7 U.S.C. § 1926(b). As the majority correctly explains in section II.C. of its opinion, however, this difficult issue has already been addressed by our court.

In *Lexington–S. Elkhorn Water District v. City of Wilmore, Kentucky*, we held that:

> whether an association has made service available is determined based on the existence of facilities on, or in the proximity of, the location to be served. If an

> association does not already have service in existence, water lines must either be within or adjacent to the property claimed to be protected by Section 1926(b) prior to the time an allegedly encroaching association begins providing service in order to be eligible for Section 1926(b) protection.

93 F.3d 230, 237 (6th Cir. 1996). In addition to the requirement that the association have "pipes in the ground" within or adjacent to the area in question, the association must also have the legal right under state law to serve the area in question to benefit from the monopoly power afforded by § 1926(b). *Id.* at 235-36.

Le-Ax, as the majority holds, "has clearly satisfied both of these requirements" as to the disputed area in this case. (Majority Op. at 9.) First, Le-Ax has a water line immediately adjacent to the University Estates development. (Majority Op. at 10.) The uncontradicted evidence is that this line has been in place since Le-Ax's creation over twenty years ago. (JA at 66-67.) Moreover, the uncontradicted evidence demonstrates that this line was designed with surplus capacity to serve future growth throughout the area, including the area encompassing the University Estates development. (JA at 69.) As the district court found in its thorough and well-reasoned opinion, "Plaintiff's distribution lines that make service available to the UE development are already in place, and have been in place since the Plaintiff's creation over twenty years ago – long before the City of Athens was interested in the right to distribute water to the region in question." (JA at 21.) Second, as the majority explains, Ohio law permits Le-Ax to serve the University Estates development. (Majority Op. at 10.)

Because Le-Ax maintains a water line with excess capacity immediately adjacent to the University Estates development (and has done so for over twenty years, anticipating future growth) and because Le-Ax has the right under state law to

serve the University Estates development, the University Estates development is within Le-Ax's service area that is protected from invasion by § 1926(b), as interpreted by our holding in *Lexington–S. Elkhorn*. Therefore, Le-Ax is using § 1926(b) in this case as a shield to protect an area where it has made service available for over twenty years. Nevertheless, the majority withholds protection under § 1926(b) because the University Estates development is not within Le-Ax's state-defined political boundary.

The majority, however, fails to explain why it matters where state law places Le-Ax's boundaries for purposes other than providing service. The flaw in the majority's analysis is that it conflates an association's political boundary with an association's service boundary. Because state law grants Le-Ax the legal right to serve the University Estates development, University Estates is within Le-Ax's state-defined service boundary. Moreover, because Le-Ax has made service available to the University Estates development via a water line with excess capacity immediately adjacent to the development, Le-Ax is entitled to the protection of § 1926(b) under our holding in *Lexington–S. Elkhorn*. The majority has not cited any case where a court found that a water district's political boundary, as opposed to its service boundary, is relevant to defining the area protected by § 1926(b).[1] Congress could have limited the protection offered by § 1926(b) to an association's state-defined political boundary; instead, Congress chose to limit the statute's protection to where the association has provided service or made service available.

---

[1] In the absence of any authority, the majority seems to base its analysis upon a student law review note that advocates the repeal of § 1926(b). (Majority Op. at 12, citing Scott Hounsel, Note: *Water Associations and Federal Protection Under 7 U.S.C. §1926(b): A Proposal to Repeal Monopoly Status*, 80 Tex. L. Rev. 155 (2001).)

In *Lexington–S. Elkhorn*, we rejected the argument that an association's state-defined political boundary is relevant to determining the area protected by § 1926(b). In *Lexington–S. Elkhorn*, the City of Wilmore, Kentucky, did not dispute that it extended its water lines into part of the plaintiff water district's territorial area. 93 F.3d at 232. The water district, Lexington–S. Elkhorn, claimed that § 1926(b) protects its territorial area from invasion by the city's water lines. *Id.* at 234. The district court ruled in favor of the city, rejecting the water district's argument that its territorial boundary was relevant to § 1926(b). *Id.* We affirmed, holding that § 1926(b) protects only that area where the water district has provided service or made service available by maintaining water lines nearby. *Id.* at 237. We found the water district's state-defined political boundaries to be irrelevant. *Id.* at 238 (looking to state law only to determine if the water district had the legal right to serve the area and finding it unnecessary to decide whether the disputed area was within the water district's state-defined boundaries).

The majority criticizes Le-Ax's "expansive" vision of § 1926(d), which, according to the majority, would give an association "monopoly status" to serve any area where it could provide service. (Majority Op. at 14.) The majority's criticism is more appropriately directed toward Congress, because § 1926(d) by its plain terms grants an eligible association monopoly status to serve any area where service is "made available" by the association. 7 U.S.C. § 1926(b). This court's binding precedent holds that service is "made available" under § 1926(d) wherever the association has the legal right to serve and the present ability to serve because it has sufficient pipes in the ground within or adjacent to the area. *Lexington–S. Elkhorn*, 93 F.3d at 237. Because there is no basis in the statute or our precedent for the majority's addition of an additional element to a plaintiff's claim under § 1926(b), I dissent.