*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0365p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

VILLAGE OF GRAFTON; KNG, LTD.,
　　　　　　　　　　　　　　*Plaintiffs-Appellants,*

　　　　*v.*

RURAL LORAIN COUNTY WATER AUTHORITY, et al.,
　　　　　　　　　　　　　　*Defendants-Appellees.*

No. 04-3643

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
Nos. 02-02037; 02-02039—Dan A. Polster, District Judge.

Submitted: June 7, 2005

Decided and Filed: August 23, 2005

Before: SILER and GIBBONS, Circuit Judges; LAWSON, District Judge.[*]

---

**COUNSEL**

**ON BRIEF:** Gretchen A. Holderman, LILLIE & HOLDERMAN, Cleveland, Ohio, Richard G. Lillie, BENESCH, FRIEDLANDER, COPLAN & ARONOFF, Cleveland, Ohio, for Appellants. Daniel D. Mason, Dennis M. O'Toole, BAUMGARTNER & O'TOOLE, Sheffield Village, Ohio, for Appellees.

---

**OPINION**

---

SILER, Circuit Judge. The Village of Grafton ("Village" or "Grafton") and KNG, Ltd. appeal the district court's grant of summary judgment to Rural Lorain County Water Authority ("RLCWA") regarding RLCWA's right to provide water services to Fox Run Subdivision ("Fox Run"), a recently developed property that was annexed by the Village in 1990. For the reasons discussed hereafter, we **AFFIRM**.

---

[*]The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

BACKGROUND

RLCWA was formed in 1974 to provide water and/or sewer service to rural areas in Ohio, pursuant to Ohio Revised Code § 6119.01 *et seq.* Fourteen townships and two villages filed a petition to organize RLCWA. The Lorain County Court of Common Pleas approved RLCWA's organization plan and found that it was "necessary, that it and the plan for the operation of . . . [RLCWA] [were] conducive to the public health, safety, convenience, and welfare and that the plan for [its] operation . . . [was] economical, feasible, fair, and reasonable." RLCWA asserts that its approved water service area included the areas constituting Fox Run *and* the Village, although the Village was not specifically listed in the petition to organize RLCWA. Eaton and Grafton Townships each passed Resolutions to express their intentions that "the *entire territory of [the] Township[s]* be included within the proposed regional water district for southern Lorain County to be known as [RLCWA]; *excluding, however, any and all existing water lines within [the] Township[s]*." The land that is now called Fox Run was in Eaton Township until June 1990, when it was legally annexed by the Village.

The Village operated its own water plant when RLCWA was established, and it continued to supply its own water until 1994, when its plant was closed. In September 1994, the Village and RLCWA executed the first of three Water Purchase Agreements, and the Village's water distribution system was connected to a RLCWA transmission line. Thereafter, RLCWA supplied water to the Village, and the Village distributed this water. In March 1999 and March 2002, RLCWA and the Village executed additional water purchase agreements to increase the amounts of water that could be purchased by the Village.

In January 2002, RLCWA obtained a $3.25 million loan from the U.S. Department of Agriculture, Rural Economic and Community Development Service ("RECDS"), which was formerly known as the Farmers Home Administration. Approximately $280,000 of this loan was used to install a water line that was made necessary by the Village's increasing water demands.

Fox Run, the property in dispute, consists of approximately twenty-nine acres and is now owned by KNG. Plans and negotiations to develop this property began in the early 1990s, and the original owners believed "that water services to Fox Run would be provided by the Village of Grafton at rates substantially lower than those which would be charged by RLCWA." In April 1990, the Village passed "a Resolution of Intent to Supply Services upon Annexation and Declaring an Emergency," in which it resolved to provide water and sewer services to the Fox Run area if the Lorain County Commissioners approved the annexation.

Although Fox Run was annexed in 1990, it was not developed for over twelve years. In August 2002, the Village accepted Fox Run's dedication plat. Thereafter, the water lines were installed, and the Village began to provide water to the development. The parties agree, however, that "RLCWA has a transmission line running up to the Fox Run subdivision" and that it "could run service lines from the existing lines into [Fox Run] and supply water to [Fox Run] overnight."

In October 2002, the Village and KNG filed a complaint for injunctive relief and declaratory judgment against RLCWA, its Board of Trustees, and John Does I-V. On the same day, RLCWA also filed a complaint for injunctive relief and declaratory judgment. These cases were consolidated, and the parties moved for summary judgment. As the court observed:

> [T]his case is really about whether [the Village] can continue to provide water to persons in previously undeveloped parts of [the Village] at either the bulk rate (the rate charged by RLCWA to [the Village]) or at a markup similar to what the RLCWA charges its non-bulk customers. The parties agree that RLCWA will continue to supply water to [Village] residents after the conclusion of this lawsuit.

The parties are not fighting over the water supply itself. Rather, they are fighting over who will retain the tap-in fees and monthly revenues for serving these new customers.

RLCWA currently supplies water to the Village at a monthly bulk rate of $11.50 per 5,131 gallons of water (the average number of gallons used by a consumer in a month). RLCWA's non-bulk customers are charged $30.24 per month per 5,131 gallons. RLCWA also charges its customers a one-time tap-in fee of $2,000. Because the parties estimate that Fox Run will include approximately thirty new homes and businesses, RLCWA's annual income from this area will be approximately $6,720 less if it cannot serve Fox Run directly but is required to provide water through the Village.

The district court determined that "the curtailment of service provided or made available to Fox Run by the RLCWA occurred at the time that Grafton began to provide water service to the development. Because the RLCWA was the recipient of federally insured funds at that time, . . . § 1926(b) prohibits Grafton from serving Fox Run." As a result, the court granted summary judgment to RLCWA.

**ANALYSIS**

This court reviews a district court's grant of summary judgment *de novo*. *Le-Ax Water Dist. v. City of Athens*, 346 F.3d 701, 704 (6th Cir. 2003). "[W]hen an appeal from a denial of summary judgment is presented in tandem with a grant of summary judgment, this court has jurisdiction to review the propriety of the district court's denial of summary judgment." *Id.* (quotation omitted). When based on purely legal grounds, the denial of summary judgment is also reviewed *de novo*. *Id.*

"In order to encourage rural water development by expanding the number of potential users and to safeguard the financial viability of rural associations and [RECDS] loans, 7 U.S.C. § 1926(b) was enacted." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir. 1996) [hereinafter, "*Lexington-S. Elkhorn*"]. RLCWA contends that Grafton's provision of water service to Fox Run violates the anti-curtailment provision in § 1926(b), which states:

> The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan.

7 U.S.C. § 1926(b). This provision "should be given a liberal interpretation that protects rural water associations indebted to the [RECDS] from municipal encroachment." *Lexington-S. Elkhorn*, 93 F.3d at 235 (quoting *Wayne v. Village of Sebring*, 36 F.3d 517, 527 (6th Cir. 1994)).

To establish that it is entitled to protection under § 1926(b), RLCWA must show that: "(1) it is an 'association' within the meaning of the Act; (2) it has a qualifying outstanding [RECDS] loan obligation; and (3) it has provided or made service available in the disputed area." *Id.* at 234. In this case, the parties do not dispute that RLCWA is a qualified "association" that has been indebted to RECDS since January 2002. The parties' arguments in this appeal focus upon the impact of the timing of events, i.e., the fact that RLCWA obtained the RECDS loan approximately twelve years after Fox Run was annexed by Grafton, and whether RLCWA had a legal right to make service available to Fox Run.

This court determines whether an association has made water service available through a two-part test. First, the court considers the "pipes in the ground" requirement. *See Le-Ax Water Dist.*, 346 F.3d at 706 (citing *Lexington-S. Elkhorn*, 93 F.3d at 237). Second, the court considers

whether the association has "the legal right under state law to serve the area in question." *Id.* (citing *Lexington-S. Elkhorn*, 93 F.3d at 235-36).

The parties agree that RLCWA has a transmission line that runs to Fox Run and that service could be provided "overnight." Therefore, RLCWA has met the "pipes in the ground" requirement. *See Lexington-S. Elkhorn*, 93 F.3d at 237 ("If an association does not already have service in existence, water lines must either be within or adjacent to the property claimed to be protected by Section 1926(b) prior to the time an allegedly encroaching association begins providing service in order to be eligible for Section 1926(b) protection.").

This court must also determine whether RLCWA has a legal right to provide service to Fox Run. As noted by this court in *Le-Ax Water District*, Ohio law permits RLCWA "[t]o supply water to users within *and without* the district." *Le-Ax Water Dist.*, 346 F.3d at 707 (quoting O.R.C. § 6119.01(A)). The *Le-Ax Water District* court held, however, that "when a rural water district's boundaries are geographically determined by the state, a rural water district cannot use § 1926(b) to obtain new customers outside the geographic area." *Id.* at 709. As a result, resolution of this case requires consideration of whether Fox Run continues to fall within RLCWA's state-determined boundaries.

The Village asserts that RLCWA lost the right to service Fox Run in 1990, when that area was annexed by the Village. The Village's argument fails, however, if RLCWA's original service area *included* the Village. Although the parties do not clearly articulate the Village's relationships with Eaton and Grafton Townships, they do not dispute the assertion that RLCWA's original water service area included the Village.

Both Grafton and Eaton Townships passed resolutions providing that their entire territories, excluding then existing water lines, were to be included within the RLCWA service area. Although the Village was not explicitly named in the petition for RLCWA's formation, there is no indication that it objected to its inclusion within the RLCWA's service area. In this case, the Village does not contend that it was not part of RLCWA's original service area or that the Townships' attempts to include it in the service area were somehow ineffective; its arguments instead focus upon its allegedly "exclusive right" to provide utility service within its boundaries. If the Village was a part of RLCWA's approved district, however, the effect of annexing Fox Run was merely to transfer it from Eaton Township, one part of RLCWA's service area, to the Village, another part of RLCWA's service area. Consequently, Fox Run was never removed from RLCWA's district.

Prior to the Village's expansion of its water distribution system to include Fox Run, its actions generally appear to have been consistent with the Townships' resolutions and its inclusion in RLCWA's service area. One exception has been identified, however – in April 1990, the Village passed a resolution that expressed an intent to provide water and sewage service to Fox Run. No steps were taken to implement this plan until August 2002, which was after RLCWA became indebted to RECDS. As a result, this 1990 resolution was insufficient to remove Fox Run from the RLCWA service area.

If § 1926(b) were not implicated in this situation, the Village would have an "exclusive right" to provide utility services. *See, e.g.*, *Village of Grafton v. Ohio Edison Co.*, 671 N.E.2d 241, 245 (Ohio 1996). This "exclusive right" is subject to certain limitations, however. The Supreme Court of Ohio has recognized that "a statute enacted to promote the health, safety, and welfare of the public can override the municipality's authority if the statute does not substantially interfere with the municipality's constitutionally granted power." *Bd. of County Comm'rs of Ottawa Cty. v. Village of Marblehead*, 711 N.E.2d 663, 665 (Ohio 1999). As the district court noted, "all parties involved in the creation of the RLCWA district . . . considered that act to be an appropriate use of the State's police power." Grafton and Eaton Townships declared that the inclusion of their

territories in RLCWA's service district was an "emergency measure necessary for the immediate preservation of the health, safety and welfare of the Township[s]." The Lorain County Common Pleas Court determined that RLCWA was "necessary, that it and the plan for [its] operation. . . [were] conducive to the public health, safety, convenience, and welfare."

The Village did not make any effort to provide water service to Fox Run until 2002, after RLCWA had obtained a RECDS loan. Prior to RLCWA's indebtedness, the Village's "exclusive right" to provide utility service would have allowed it to deny RLCWA the right to provide service to this area. The Village's "exclusive right," however, is limited by § 1926(b). This provision "should be given a liberal interpretation that protects rural water associations indebted to the [RECDS] from municipal encroachment," *Lexington-S. Elkhorn*, 93 F.3d at 235 (quoting *Wayne*, 36 F.3d at 527). "Construing § 1926 liberally, as this Court is required to do, it is not necessary that [the Village] actually annex or attempt to physically include [Fox Run] in its municipality in order for curtailment to be found." *Adams Cty. Regional Water Dist. v. Village of Manchester*, 226 F.3d 513, 518 (6th Cir. 2000) (internal citation omitted).

Because the Village started to provide water service to Fox Run only after RLCWA became indebted to RECDS, § 1926(b) prevents the Village from denying RLCWA the right to provide service. Requiring the Village to remain within RLCWA's service area while the RECDS loan is outstanding does not "substantially interfere with the municipality's constitutionally granted power." *Marblehead*, 711 N.E.2d at 665.

**AFFIRMED**.